[No. B198664. Second Dist., Div. Seven. Sept. 24, 2007.]

FOOTHILL FEDERAL CREDIT UNION, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
EDWIN A. KING et al., Real Parties in Interest.

COUNSEL

Anderson, McPharlin & Conners, Eric A. Schneider and Jason C. Ming for Petitioner.

No appearance for Respondent.

Law Offices of Peter L. Tripodes and Peter L. Tripodes for Real Parties in Interest.

## OPINION

ZELON, J.—Edwin A., Janet, Jill, Amy, and Melissa King sued Foothill Federal Credit Union (FFCU) for, inter alia, invasion of privacy and intentional infliction of emotional distress, claiming that FFCU produced consumer records beyond the scope of a subpoena that had been narrowed. FFCU demurred to these causes of action on the basis of the litigation privilege (Civ. Code, § 47) as a complete bar to the causes of action, and the trial court overruled the demurrers. We grant FFCU's petition for writ of mandate because the litigation privilege bars real parties in interest's claims.

### FACTUAL AND PROCEDURAL BACKGROUND

The gravamen of the underlying litigation is a subpoena served upon FFCU in a probate action to which Janet King was a party. The subpoena required FFCU to produce copies of all account information for all accounts

in the name of the individual whose estate was the subject of the action, Norman Kaplan, or in the name of Janet King, including accounts held jointly by Kaplan or Janet King and another person. The subpoena was later narrowed by agreement by counsel to records that were "in the name of Norman Kaplan or in the name of Norman Kaplan jointly (and/or) with Janet King, and no other documents." FFCU produced documents in response to the subpoena.

The Kings claim that the records produced by FFCU included personal financial records of all the real parties in interest despite the limitations placed on the subpoena and notwithstanding the fact that the only consumer notice served pursuant to Code of Civil Procedure section 1985.3 was served on Janet King. They filed a complaint alleging breach of contract, intentional infliction of emotional distress, and invasion of privacy. FFCU demurred to each cause of action. The trial court sustained the demurrer to the breach of contract cause of action, and overruled the demurrers to the other two causes of action. FFCU filed a writ petition to challenge the trial court's denial of its demurrers to the causes of action for intentional infliction of emotional distress and invasion of privacy.

## DISCUSSION

As codified in Civil Code section 47, subdivision (b), a privileged publication is one made "[i]n any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable" under various portions of the Code of Civil Procedure. The Supreme Court has established a four-part test for the application of the litigation privilege: it "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 [266 Cal.Rptr. 638, 786 P.2d 365] (*Silberg*).) The privilege is absolute, and it applies to causes of action for intentional infliction of emotional distress and invasion of privacy. (*Id.* at p. 215.)

The elements for application of the litigation privilege are met here. First, the communication—the disclosure of the private financial information contained within the credit union records—was made in the course of judicial proceedings: in the context of the pending litigation, the counsel of record for a party issued a subpoena duces tecum requiring FFCU to produce documents. Next, the FFCU was a participant authorized by law, as it was brought

into the proceedings by the issuance of the subpoena ordering it to produce the specified documents. (*Adams v. Superior Court* (1992) 2 Cal.App.4th 521, 529 [3 Cal.Rptr.2d 49] [litigation privilege "is not restricted to the actual parties to the lawsuit but need merely be connected or related to the proceedings"].) Third, the communication was made to achieve the objects of the litigation—although the FFCU was not a party to the lawsuit, it was complying with a subpoena issued by the counsel of record for a party to that suit, and he sought the records to "prove [plaintiff's] position." The documents were produced to provide the party who subpoenaed them with potential evidence in the litigation. Finally, although the subpoena contained a broad demand for documents, it is clear that the records bore some relation to the action, as counsel declared under penalty of perjury that the funds in question were held or transferred through the accounts at FFCU and that the records were sought in order to prove the allegation of "elder financial abuse." The litigation privilege therefore applies.

Indeed, there appears to be no dispute between the parties as to whether, on these facts, the elements of the litigation privilege are established. Instead, real parties in interest address the policy concerns that would support or discourage application of the privilege here. Real parties in interest raise three objections to the application of the litigation privilege: first, that the policy underlying the expansion of the litigation privilege to torts beyond defamation is not served by granting immunity to a custodian of personal financial records who violates Code of Civil Procedure[1] section 1985.3; second, that the effect of applying the litigation privilege as a defense to a violation of section 1985.3 would abrogate its purpose and effect because no custodian would then have any incentive to comply with section 1985.3; and third, that application of the litigation privilege to a violation of section 1985.3 leads to an absurd result in that the very event that gives rise to the operation of the statute—litigation—would also confer immunity for failure to comply with it. None of these arguments are availing.

Real parties in interest's first contention is that the purposes of the litigation privilege are not served by granting immunity under the privilege to a custodian of records who discloses them in a manner not compliant with section 1985.3. We disagree. The "principal purpose" of the litigation privilege is "to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative

---

[1] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

tort actions. [Citations.] [¶] [It] promotes the effectiveness of judicial proceedings by encouraging 'open channels of communication and the presentation of evidence' in judicial proceedings. [Citation.] A further purpose of the privilege 'is to assure utmost freedom of communication between citizens and public authorities whose responsibility is to investigate and remedy wrongdoing.' [Citations.] Such open communication is 'a fundamental adjunct to the right of access to judicial and quasi-judicial proceedings.' [Citation.] Since the 'external threat of liability is destructive of this fundamental right and inconsistent with the effective administration of justice' [citation], courts have applied the privilege to eliminate the threat of liability for communications made during all kinds of truth-seeking proceedings: judicial, quasi-judicial, legislative and other official proceedings. [¶] . . . ' "[T]he dictates of public policy . . . require[] that the paths which lead to the ascertainment of truth should be left as free and unobstructed as possible" [citation].' [Citation.] Thus, witnesses should be free from the fear of protracted and costly lawsuits which otherwise might cause them either to distort their testimony or refuse to testify altogether. [Citations.] [¶] [The privilege] further promotes the effectiveness of judicial proceedings by encouraging attorneys to zealously protect their clients' interests. . . . [¶] Finally, in immunizing participants from liability for torts arising from communications made during judicial proceedings, the law places upon litigants the burden of exposing during trial the bias of witnesses and the falsity of evidence, thereby enhancing the finality of judgments and avoiding an unending roundelay of litigation, an evil far worse than an occasional unfair result. [Citations.]" (*Silberg, supra,* 50 Cal.3d at pp. 213–214.) As the California Supreme Court stated, "Given the importance to our justice system of ensuring free access to the courts, promoting complete and truthful testimony, encouraging zealous advocacy, giving finality to judgments, and avoiding unending litigation, it is not surprising that . . . the litigation privilege[] has been referred to as 'the backbone to an effective and smoothly operating judicial system.' [Citation.]" (*Id.* at pp. 214–215.)

Not every justification for the litigation privilege is presented here. Moreover, we do not approve or encourage any failure to comply with section 1985.3. Nonetheless, the basic policy underlying the litigation privilege supports the application of the privilege to the production of documents in response to a subpoena duces tecum here. First, application of the litigation privilege gives the recipient of a subpoena duces tecum freedom to respond to that subpoena without fear of being harassed subsequently by derivative tort actions. (*Silberg, supra,* 50 Cal.3d at p. 213.) Removing an external threat of liability promotes the effectiveness of judicial proceedings by

encouraging open channels of communication and the presentation of evidence in judicial proceedings. It frees recipients of a subpoena duces tecum seeking consumer records from the "fear of protracted and costly lawsuits" which could cause them to attempt to delay or thwart the production of documents to which the party issuing the subpoena is entitled. Applying the litigation privilege thus motivates recipients of a subpoena duces tecum to comply with that subpoena as appropriate, and therefore does not erect barriers to litigants who must fulfill their burden of "exposing during trial the bias of witnesses and the falsity of evidence"; this, as the Supreme Court has observed, tends to enhance "the finality of judgments and [to] avoid[] an unending roundelay of litigation, an evil far worse than an occasional unfair result." (*Id.* at p. 214.)

Real parties in interest's second and third arguments, that application of the litigation privilege contravenes the purpose of section 1985.3 and leads to an absurd result, both rest on the real parties in interest's construction of section 1985.3 as a statute that makes a custodian of records a guarantor of consumers' privacy rather than a statute that provides a method for a consumer to protect his or her own privacy when a subpoena seeking private records is issued. We have reviewed the legislative history for the initial enactment of section 1985.3 and find no indication there, or in the language of any of its amendments, that there has ever been any intention expressed by the Legislature to create a private right of action in section 1985.3 or to establish any remedy against a custodian of records for a violation of that section. Rather, the Legislature enacted section 1985.3, a civil discovery statute, to establish a process by which an individual would learn of subpoenas for his or her confidential records and would have the time and opportunity to litigate the propriety of that subpoena prior to the release of the private records. The statute was an outgrowth of the then recent amendment to the California Constitution that elevated the right of privacy to an inalienable right, and the California Supreme Court decision in *Valley Bank of Nevada v. Superior Court* (1975) 15 Cal.3d 652 [125 Cal.Rptr. 553, 542 P.2d 977], in which the court held that before a bank could release confidential information to a civil litigant about a bank customer, the bank was first required to take "reasonable steps" to notify the customer that the customer's records were being sought. The Supreme Court wrote, "[B]efore confidential customer information may be disclosed in the course of civil discovery proceedings, the bank must take reasonable steps to notify its customer of the pendency and nature of the proceedings and to afford the customer a fair opportunity to assert his interests by objecting to disclosure, by seeking an appropriate protective order, or by instituting other legal proceedings to limit the scope or nature of the matters sought to be discovered." (*Id.* at p. 658; see also *Lantz v. Superior Court* (1994) 28 Cal.App.4th 1839, 1848 [34 Cal.Rptr.2d 358] (*Lantz*).)

Although amendments over the years have altered the scope of the records subject to the consumer notice process and the details of the notice and the process to challenge the subpoena, the basic thrust of the statute has remained unchanged: It requires that consumers be informed when certain personal records have been subpoenaed, and it offers them the opportunity to challenge that subpoena before the documents sought are produced. Section 1985.3 offers a consumer a "statutory procedural mechanism for enforcing his or her right to privacy." (*Lantz, supra*, 28 Cal.App.4th at p. 1852.)

Consistent with this purpose, the primary focus of section 1985.3 is the establishment of the required notice to the consumer and the process by which the consumer may challenge subpoenas seeking confidential records. Very little of the statute is even directed toward the party receiving the subpoena. The statute merely directs that "No witness or deposition officer shall be required to produce personal records after receipt of notice that the motion has been brought by a consumer, or after receipt of a written objection from a nonparty consumer, except upon order of the court in which the action is pending or by agreement of the parties, witnesses, and consumers affected" (§ 1985.3, subd. (g)), and that the custodian of records may decline to produce the requested documents if the statutory procedure has not been followed. (§ 1985.3, subd. (k) ["Failure to comply with this section shall be sufficient basis for the witness to refuse to produce the personal records sought by a subpoena duces tecum"].) Elsewhere in the discovery statutes the Legislature has provided that the custodian shall not deliver the documents before the designated date and time unless the parties and the consumer have stipulated to an earlier delivery. (§ 2020.430, subd. (d).)

Section 1985.3 does not prescribe or proscribe conduct by the recipient of the subpoena, and it does not remotely establish that erroneously broad disclosure of documents is actionable. The closest approximation of a remedy for a violation of section 1985.3 is a provision in section 1987.1 that authorizes the trial court to "make any other order as may be appropriate to protect the parties, the witness, the consumer, or the employee from unreasonable or oppressive demands, including unreasonable violations of the right of privacy of the witness, consumer, or employee" along with quashing or modifying subpoenas of consumer records. (§ 1987.1, as amended by Stats. 2007, ch. 113, § 3.) Also, section 2023.030 authorizes the trial court to impose monetary sanctions against anyone engaging in discovery abuse. But neither provision endorses litigation against the holder of the records for responding to a subpoena, even if, as here, the response was allegedly overly

broad in light of subsequent modifications to the subpoena's scope. If the Legislature had intended to create a private right of action to punish record holders' violation of the section, it certainly could have done so; instead, it created a purely prospective discovery statute "to provide a codified procedure by which a consumer's privacy interest in his or her personal records could be protected." (*Lantz, supra,* 28 Cal.App.4th at p. 1852.)

In the absence of any legal authority for a private right of action or legal remedy against a custodian of records who discloses a consumer's records beyond those specified in a narrowed subpoena or despite a faulty notice to consumer, real parties in interest have carefully mined the existing case law for decisions that could be interpreted as hinting at the existence of such a thing. Real parties in interest's citation to a single word in *Slagle v. Superior Court* (1989) 211 Cal.App.3d 1309 [260 Cal.Rptr. 122] does not demonstrate that consumers have a legal remedy in such circumstances. In *Slagle*, a decision addressing whether specific medical records were privileged or discoverable, the court discussed whether the trial court could act on a motion to quash a subpoena brought after the time limits specified in section 1985.3 and concluded that the stated time limits were not jurisdictional. (*Slagle*, at pp. 1312–1313.) The court said, "The time limits mentioned in the procedure for bringing the motion [to quash] are obviously designed to guide those involved as to when the witness with the records may safely honor or not honor the subpoena when the consumer objects." (*Id.* at p. 1312.) Real parties in interest argue that the use of the word "safely" means that there is "a consequence to the custodian for violation of Section 1985.3," for "the word 'safely' would have been unnecessary if the custodian's failure to comply with the statute were without consequence to the custodian." It could be that the court meant to contemplate that there may be dangers to the custodian of records for an improper response to a subpoena duces tecum, but we cannot treat this possibility as a holding. Cases are not authority for propositions not considered. (*People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 198 [96 Cal.Rptr.2d 463, 999 P.2d 686].) Moreover, even if we were to accept real parties in interest's argument, there is no indication that the court was referring to a covert private right of action that is not found anywhere else in the statutory or decisional law of our state as opposed to making an imprecise reference to the universe of sanctions that may be imposed for failure to comply with a valid subpoena. (See § 2023.030; *Sears, Roebuck & Co. v. National Union Fire Ins. Co. of Pittsburgh* (2005) 131 Cal.App.4th 1342, 1350 [32 Cal.Rptr.3d 717].)

We are similarly unpersuaded that the decision in *Colleen M. v. Fertility & Surgical Associates of Thousand Oaks* (2005) 132 Cal.App.4th 1466 [34 Cal.Rptr.3d 439] (*Colleen M.*) has any bearing on this matter. In *Colleen M.*, the plaintiff sued a medical service provider for invasion of privacy and emotional distress because the provider released information about her treatment to her former fiancé and his counsel. (*Id.* at pp. 1470–1471.) This court affirmed the summary judgment because the Confidentiality of Medical Information Act (CMIA) (Civ. Code, § 56 et seq.) permitted the disclosure of the medical records to the former fiancé and compelled their disclosure to his attorney. (132 Cal.App.4th at pp. 1478–1479.) With respect to the disclosure of records to counsel, we explained that the CMIA required medical providers to produce the subject records if the disclosure was compelled by a subpoena duces tecum or other discovery provision, and that here, the evidence showed that the records sought from the medical provider were medical information, the fiancé was a party to the litigation, and that the records were produced pursuant to his subpoena. (132 Cal.App.4th at p. 1479.) The evidence also showed that the fiancé served "Colleen's attorney by mail with a copy of the subpoena and the notice of the right to object to disclosure of the records as required by Code of Civil Procedure section 1985.3, subdivision (e) and Colleen did not file an objection. This evidence was sufficient to establish a complete defense to the cause of action under [Civil Code] section 56.10, subdivision (b)(3)." (*Colleen M.*, at p. 1479.) This conclusion obviated any need to address the medical provider's alternate claims, one of which was that the litigation privilege barred the action. (*Id.* at p. 1478.)

Real parties in interest argue that the litigation privilege must not apply, because if it did, we would have decided the case on that ground. We expressly declined to address the alternate arguments in *Colleen M.*, *supra*, 132 Cal.App.4th 1466 because Civil Code section 56.10 provided a complete defense to the cause of action. This was not an implicit holding that the litigation privilege does not apply: It was an explicit statement that because a complete defense to the cause of action existed, there was no need for the court to consider further possible complete defenses. The opinion is not reasonably susceptible of the interpretation real parties in interest urge. (*People v. Superior Court* (*Zamudio*), *supra*, 23 Cal.4th at p. 198.)

█ Because section 1985.3 is a discovery statute designed to establish a method by which consumers are informed and afforded the opportunity to prospectively challenge a subpoena that seeks their confidential information from any of a number of specified sources, the application of the litigation privilege to bar a suit based on the alleged disclosure of confidential records that were (a) responsive to the original subpoena, not the narrowed request

agreed upon by the parties; and (b) not accompanied by notices to the consumer directed to all the real parties in interest does not violate the purpose and effect of section 1985.3. Section 1985.3 served its purpose here—the real parties in interest learned of the subpoena, they objected to it, and the subpoena was subsequently narrowed by mutual agreement between the parties. That is all that section 1985.3 directs. We understand that the ultimate delivery of records that apparently were responsive to the original subpoena resulted in the disclosure of records beyond those agreed to by the parties when they narrowed the subpoena, but this is a matter beyond the scope of section 1985.3. Contrary to real parties in interest's claim, it does not frustrate the purpose of section 1985.3 to apply the litigation privilege to suits against custodians of records because section 1985.3 neither contemplates nor provides recourse for a consumer against those custodians.[2]

Moreover, application of the litigation privilege here does not lead to an absurd result, as claimed by real parties in interest. They assert that because it is litigation that gives rise to the subpoenas, for litigation to also give rise to the litigation privilege "renders the enactment of the law an idle act." This argument would be meritorious if the purpose of section 1985.3 was to provide consumers the opportunity to sue custodians of records who disclosed private records in violation of that statute. But, as we have explained above, section 1985.3 is designed to give consumers the opportunity to be aware of and to block or limit subpoenas of their personal records. Not permitting subsequent suits based on a custodian's overbroad response to a subpoena or response to a subpoena that was deficient because of insufficient notice to the affected consumers does not eviscerate the statute's function or its purpose. While real parties in interest are admittedly left without a remedy against FFCU in responding to the subpoena after the section 1985.3 notice and modification process has taken place, they are not without the ability to seek the return of the erroneously produced records from the court or such other relief as may be appropriate. Thus, while this situation demonstrates that the process set forth in section 1985.3 may be insufficient to protect consumer rights in some circumstances, this does not render section 1985.3 absurd or of no force or effect.

---

[2] Real parties argue that application of the litigation privilege to suits such as this one would "eliminate[]" the purpose of section 1985.3, render it "meaningless," and "in effect, repeal that statute." We fail to see this as a likely result in light of the continued existence of opportunities for consumers to quash or modify subpoenas seeking their personal records. In any event, if custodians of records were previously unaware that the litigation privilege barred suits for intentional infliction of emotional distress or invasion of privacy based on their responses to subpoenas duces tecum but in the future respond indiscriminately to subpoenas in light of their newly discovered immunity from suit, we are confident that the Legislature will create a remedy for consumers aggrieved by rogue custodians.

Because each element of the litigation privilege is satisfied here, the privilege applies to bar the real parties in interest's causes of action for invasion of privacy and intentional infliction of emotional distress, and the trial court erred in overruling petitioner's demurrers to the first and second causes of action.

## DISPOSITION

The petition is granted. A peremptory writ shall issue directing respondent superior court to vacate its order overruling petitioner's demurrer to the first and second causes of action, and to issue a new and different order sustaining the demurrer to each of those causes of action without leave to amend. Petitioner shall recover costs incurred in these writ proceedings.

Woods, J., concurred.

**JOHNSON, Acting P. J.,** Concurring.—I concur in the judgment and write separately for the sole purpose of urging the Legislature to provide an effective means capable of enforcing the provisions it enacted which purport to require financial institutions to protect the privacy interests of consumers. Although many or most such institutions may elect to voluntarily abide by Code of Civil Procedure section 1985.3, after this opinion they will feel no compulsion to do so. The parties and their lawyers involved in the litigation itself are subject to various unpleasant consequences—such as monetary or evidentiary sanctions—for unlawful behavior in the litigation context. But financial institutions which violate section 1985.3 face no such possibilities.

As there is "no right without a remedy,"[1] there is no *legal* duty without a sanction for ignoring that duty. Otherwise the duty is only a *moral* duty, the violator of which risks nothing but a guilty conscience. Thus, I urge the Legislature to create—or recreate—the sanction and thus the remedy for this important aspect of the right to privacy in California.

---

[1] *Peck v. Jenness* (1849) 48 U.S. 612, 623 [12 L.Ed. 841] ("A legal right without a remedy would be an anomaly in the law."); *Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 112 [101 Cal.Rptr. 745, 496 P.2d 817] ("There is a maxim as old as law that there can be no right without a remedy . . . ."); *American Philatelic Soc. v. Claibourne* (1935) 3 Cal.2d 689, 699 [46 P.2d 135] (same); *Nougues v. Douglass* (1857) 7 Cal. 65, 80 ("It is a rule as old as the law itself, that there is no right without a remedy, and wrong without a redress . . . .").

The sanction the Legislature devises might take the form of a new section expressly authorizing those harmed by violations of this statutory protection to file lawsuits, along the lines of real parties in interest's damage action in this case. There may be other options, too. But unless the Legislature creates some *effective* enforcement mechanism, one that operates within the litigation environment and despite the expansive litigation privilege the courts have carved out in the past two decades, Code of Civil Procedure section 1985.3 is nothing more than precatory—an aspiration not a protection for consumers whose constitutional rights to privacy are at stake.

The petition of real parties in interest for review by the Supreme Court was denied December 19, 2007, S157643.