Filed 7/17/25  Moazed v. Wells Fargo Bank CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| SALOOMEH MOAZED,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant and Respondent. | G064083<br><br>(Super. Ct. No. 30-2022-01289670)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Nathan T. Vu, Judge. Affirmed.

John J. Gulino for Plaintiff and Appellant.

Severson & Werson, Jan T. Chilton, Andrew S. Elliott and Elizabeth C. Farrell for Defendant and Respondent.

Appellant Saloomeh Moazed[1] sued respondent Wells Fargo Bank, N.A. (Wells Fargo). Wells Fargo allegedly improperly produced her records in response to a subpoena. The trial court sustained Wells Fargo's demurrer because the litigation privilege barred all of the asserted causes of action. We agree and affirm.

FACTUAL AND PROCEDURAL HISTORY

In July 2023, Saloomeh filed her first amended complaint (FAC), asserting causes of action for negligence, invasion of privacy, intentional infliction of emotional distress, unfair business practices in violation of Business and Professions Code section 17200 et seq., and breach of the covenant of good faith and fair dealing.[2] The FAC alleged, inter alia, Wells Fargo produced her bank and financial records to an attorney, Matthew Hess. According to the FAC, Wells Fargo determined it would produce Saloomeh's records to Hess because Wells Fargo "mistakenly determined that [Saloomeh] was the subject of a subpoena when only the records of her sister were being sought." Prior to the production of the records, Hess allegedly confirmed to Wells Fargo he had not sought Saloomeh's records.

The FAC alleged, on June 21, 2022,[3] Saloomeh received written notification from Wells Fargo that her "financial records as maintained by [Wells Fargo] had been the subject of a 'legal order' which required that

[1] As Saloomeh Moazed and her sister, Sharareh Moazed, share the same last name, we refer to them by their first names; we intend no disrespect.

[2] The trial court previously granted Wells Fargo's demurrer to certain causes of action in the initial complaint with leave to amend.

[3] The FAC also alleged she received this written notification on June 22, 2022.

[Wells Fargo] provide the party requesting the production of [Saloomeh's] financial records by June 20, 2022." The written notification allegedly was dated June 13, 2022, and postmarked June 17, 2022. According to the FAC, after receiving the written notification, Saloomeh contacted Wells Fargo, which agreed to investigate her concerns, and her counsel also contacted Wells Fargo. The FAC alleged, after receiving Saloomeh's complaint that her records were being wrongly released, Wells Fargo "claimed that [Saloomeh] was the holder of accounts with [Wells Fargo] that were held jointly with her sister therefore justifying the release of [Saloomeh's] bank and financial records." Wells Fargo also allegedly informed Saloomeh it "had investigated [Saloomeh's] complaint regarding the release or production of her bank and financial records without her knowledge or permission and concluded that '[a]fter exhausting our resources, we found no records for any joint accounts that you shared with your sister and we have closed the existing case as of the date of this letter.'"

In August 2023, Wells Fargo filed a demurrer to the FAC, asserting all of the causes of action are barred by the litigation privilege and, alternatively, each of the causes of action failed on other grounds. Wells Fargo also sought judicial notice of Peyman Javaherbin's motion to compel responses to subpoena duces tecum for production of business records to Wells Fargo & Co. and its exhibit 1, which were filed in *Sharareh Moazed v. Peyman Javaherbin, Individually and as Trustee of the PJS Trust*, Los Angeles County Superior Court case No. 21SMCV01336. Exhibit 1 included the deposition subpoena for production of business records to Wells Fargo &

3

Co.[4] That subpoena sought two categories of documents: (1) "[m]onthly statements for all financial accounts of which Sharareh . . . is an owner, trustee, principal, agent, beneficiary or signatory, from January 1, 2010, to the present"; and (2) "[a]ll agreements for the lease or rental of a safety deposit box to which Sharareh . . . is a party, as an owner, trustee, principal, agent, beneficiary or signatory, from January 1, 2010, to the present."

In January 2024, the trial court sustained Wells Fargo's demurrer to all of the causes of action in the FAC with leave to amend and granted Wells Fargo's request for judicial notice. The trial court determined the litigation privilege barred all of the causes of action.[5] Although the trial court granted leave to amend, Saloomeh did not file a second amended complaint, judgment was entered, and Saloomeh timely appealed.

## DISCUSSION

"In furtherance of the public policy purposes it is designed to serve," the litigation privilege "has been given broad application." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 211 (*Silberg*); see Civ. Code, § 47, subd. (b).) "The Supreme Court has established a four-part test for the application of the litigation privilege: it 'applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some

---

[4] While the subpoena was issued to "Wells Fargo & Co." and the respondent on this appeal is "Wells Fargo Bank, N.A.," no party argues this difference is material to this appeal.

[5] Additionally, the trial court addressed Wells Fargo's alternative demurrer arguments. The trial court determined the cause of action for intentional infliction of emotional distress failed for other reasons, but it rejected Wells Fargo's alternative demurrer arguments as to the other causes of action.

connection or logical relation to the action.'" (*Foothill Federal Credit Union v. Superior Court* (2007) 155 Cal.App.4th 632, 635 (*Foothill*).)

"The principal purpose" of the litigation privilege "is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." (*Silberg, supra*, 50 Cal.3d at p. 213.) The litigation privilege "promotes the effectiveness of judicial proceedings by encouraging 'open channels of communication and the presentation of evidence' in judicial proceedings. [Citation.] A further purpose of the privilege 'is to assure utmost freedom of communication between citizens and public authorities whose responsibility is to investigate and remedy wrongdoing.' [Citations.] Such open communication is 'a fundamental adjunct to the right of access to judicial and quasi-judicial proceedings.' [Citation.] Since the 'external threat of liability is destructive of this fundamental right and inconsistent with the effective administration of justice' [citation], courts have applied the privilege to eliminate the threat of liability for communications made during all kinds of truth-seeking proceedings: judicial, quasi-judicial, legislative and other official proceedings." (*Ibid.*) The litigation privilege "further promotes the effectiveness of judicial proceedings by encouraging attorneys to zealously protect their clients' interests. '[I]t is desirable to create an absolute privilege . . . not because we desire to protect the shady practitioner, but because we do not want the honest one to have to be concerned with [subsequent derivative] actions . . . .'" (*Id.* at p. 214.)

On appeal, Saloomeh argues the litigation privilege does not bar her causes of action. We review this issue de novo. (*Chen v. Berenjian* (2019) 33 Cal.App.5th 811, 815.)

5

The trial court relied on *Foothill* in concluding the litigation privilege applied here. In *Foothill*, Foothill Federal Credit Union (FFCU) allegedly made a production containing the plaintiffs' financial records that was beyond the scope of a narrowed subpoena, and only one of the five plaintiffs whose records were produced received a consumer notice under Code of Civil Procedure section 1985.3. (*Foothill, supra*, 155 Cal.App.4th at pp. 634–635.) After the trial court overruled a demurrer as to claims for intentional infliction of emotional distress and invasion of privacy, FFCU filed a writ petition, which the Court of Appeal granted. (*Ibid.*)

The Court of Appeal concluded the elements for applying the litigation privilege were met. (*Foothill, supra*, 155 Cal.App.4th at pp. 635–636.) First, the court concluded the disclosure of the records was made in the course of judicial proceedings as counsel of record for a party in pending litigation had issued a subpoena duces tecum requiring the production of documents. (*Id.* at p. 635.) Second, the court found FFCU was a participant authorized by law because it was brought into the proceedings by the subpoena. (*Id.* at pp. 635–636.) Third, the court determined the disclosure of the records was made to achieve the objects of the litigation because, although FFCU was not a party in the underlying lawsuit, it was complying with a subpoena issued by a counsel in that lawsuit and "[t]he documents were produced to provide the party who subpoenaed them with potential evidence in the litigation." (*Id.* at p. 636.) Fourth, the court concluded "the records bore some relation to the action, as counsel declared under penalty of perjury that the funds in question were held or transferred through the accounts at FFCU and that the records were sought in order to prove the allegation of 'elder financial abuse.'" (*Ibid.*)

6

Similar to the Court of Appeal in *Foothill*, we conclude the elements for applying the litigation privilege are met under the circumstances here.[6] For the first element, the alleged communication was made in the course of a judicial proceeding as counsel had issued a subpoena requiring Wells Fargo to produce documents. (*Foothill, supra*, 155 Cal.App.4th at p. 635.) For the second element, Wells Fargo was a participant authorized by law because it received a subpoena ordering the production of documents. (*Id.* at pp. 635–636.)

Regarding the third element, we conclude the communication here was made to achieve the objects of the litigation. The documents were produced in an attempt to comply with the subpoena and provide potential evidence to the subpoenaing party, even if the production was allegedly overbroad by containing Saloomeh's records that were not called for by the subpoena. Saloomeh argues the production of her records did not achieve any objects of the underlying litigation because she was not a party to the underlying litigation and the subpoena and counsel did not seek her records. However, the Court of Appeal in *Foothill* concluded this element was met, notwithstanding the production allegedly included records beyond the scope of the narrowed subpoena. (*Foothill, supra*, 155 Cal.App.4th at pp. 634–636.)

Regarding the fourth element, Saloomeh similarly contends the production of her records had no connection or logical relationship to the underlying litigation because she was not a party to the underlying litigation

---

[6] Saloomeh has not argued on appeal the litigation privilege does not apply to any of the types of claims she asserted. (See *L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 620 ["'[w]hen an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived'"].)

and the subpoena and counsel did not seek her records. Although not argued by Saloomeh, we note the record on appeal here does not contain a similar declaration to the one in *Foothill* where "counsel declared under penalty of perjury that the funds in question were held or transferred through the accounts at FFCU and that the records were sought in order to prove the allegation of 'elder financial abuse.'" (*Foothill, supra*, 155 Cal.App.4th at p. 636.) However, we still find *Foothill* to be persuasive here. As discussed, the Court of Appeal in *Foothill* determined this fourth element was met, notwithstanding that FFCU allegedly produced records beyond the scope of the narrowed subpoena. (*Id.* at pp. 634–636.) Here, Saloomeh has not argued the documents sought by the subpoena regarding her sister were irrelevant to her sister's underlying litigation. While Wells Fargo allegedly mistakenly[7] included Saloomeh's records in its production in response to the subpoena, we do not conclude the litigation privilege ceases to protect that communication under these circumstances. Saloomeh also has not cited any case concluding that an alleged production containing documents beyond the scope of a subpoena was not protected by the litigation privilege.[8]

---

[7] In her appellate brief, Saloomeh says she alleges "Wells Fargo released [her] financial records because it mistakenly believed that [she] was the subject of the subpoena" and "Wells Fargo actually mistakenly determined that [Saloomeh] and her sister, the subject of the subpoena, were the same person and had no idea that they were sisters."

[8] The only cases Saloomeh cites for this argument are *Foothill*, which found the litigation privilege applied, and *Silberg*, which did not concern a production in response to a subpoena. (*Foothill, supra*, 155 Cal.App.4th at pp. 635–636; *Silberg, supra*, 50 Cal.3d at pp. 210–211.)

## DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.


                                    MOTOIKE, ACTING P. J.

WE CONCUR:


GOODING, J.


SCOTT, J.