Filed 5/5/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| EVAN C. NELSON,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>TUCKER ELLIS, LLP,<br><br>      Defendant and Respondent. | A153661<br><br>(City & County of San Francisco<br>Super. Ct. No. CGC-13-535453) |

      This is an appeal from judgment on the pleadings entered by the trial court in favor of defendant Tucker Ellis, LLP (Tucker Ellis), a law firm. Plaintiff Evan C. Nelson, an attorney, brought this tort action against his former employer Tucker Ellis based on its production of materials in response to a valid out-of-state subpoena. According to Nelson, these materials were his privileged and confidential work product communications not subject to disclosure without his consent. He asserts causes of action for negligence, invasion of privacy, intentional and negligent interference with contract, intentional and negligent interference with prospective economic advantage, and conversion.

      On appeal, Nelson seeks reversal of the judgment, arguing the trial court prejudicially erred when finding each of his causes of action barred under the law of the case as determined by this court in *Tucker Ellis LLP v. Superior Court* (2017) 12 Cal.App.5th 1233 (*Tucker Ellis III*). In *Tucker Ellis III*, we held inter alia that Tucker Ellis, not Nelson, was the

holder of the work product privilege with respect to the materials in question. Nelson also challenges the trial court's alternative ruling that the litigation privilege codified in Civil Code section 47 barred each of his claims, as well as the court's subsequent denial of his request to amend the complaint. For reasons set forth below, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In the name of judicial efficiency, we begin with a recitation of the facts relevant to this appeal as set forth in *Tucker Ellis III*.

"Nelson is a California attorney specializing in asbestos defense, and was employed by Tucker Ellis as a trial attorney in the firm's mass tort and product liability practice group in San Francisco beginning in November of 2007. In late 2009, Nelson was promoted to the position of 'non-capital partner,' a position he held until November of 2011, when he left Tucker Ellis to join a competing law firm in the same practice area.

"When Nelson joined Tucker Ellis, he signed an employment agreement, stating that he 'agree[d] to conform to the rules, regulations and policies of the Firm.' During Nelson's employment, Tucker Ellis also provided employees with a nonpartner attorney personnel handbook, which stated, '[a]ll records and files maintained by Tucker Ellis & West LLP' were 'the property of Tucker Ellis & West LLP,' and '[a]ll documents, including email and voice mail, received, created or modified by any attorney are the property of Tucker Ellis & West LLP.' The 2007 Tucker Ellis & West LLP practice policy manual similarly provided that, 'Firm provided Technology Systems are Firm property.'

"As part of his employment, Nelson worked with a group of scientific consulting experts at the Gradient Corporation (Gradient). Gradient was retained by Tucker Ellis to assist in litigation for a Tucker Ellis client. In

2

2008, Nelson exchanged a series of e-mails with Gradient consultants about medical research articles relating to smoking and/or radiation (rather than asbestos) as causes of mesothelioma (hereinafter also referred to as 'attorney work product e-mails'). Around the same time, Tucker Ellis entered into an agreement with Gradient to research existing scientific studies on the causes of mesothelioma, and summarize them in a published review article that was ultimately titled, '*Ionizing radiation: a risk factor for mesothelioma.*'

"In September of 2011, while Nelson was still employed at Tucker Ellis, the law firm was contacted by counsel of record in *Durham v. General Electric Co.* (*Durham*), a litigation matter pending in Kentucky. *Durham* counsel advised that Tucker Ellis would be served with a subpoena seeking documents related to payments made by Tucker Ellis to Gradient to fund medical research articles and communications between Tucker Ellis and Gradient regarding such articles. Tucker Ellis's managing partner discussed the anticipated subpoena with Nelson, albeit the parties disagree about the contents of those conversations.

"After Nelson left Tucker Ellis, the law firm was served with the anticipated subpoena issued in Ohio pursuant to an out-of-state commission in the *Durham* case. The subpoena sought, in pertinent part, the production of '[a]ny and all emails, letters or other communications between Tucker, Ellis & West LLP and Goodman, Gradient or Exponent regarding the research or publication' of 'any literature or studies related to mesothelioma, asbestos or radiation-induced mesothelioma' funded by Tucker Ellis, including the noted published review article. Tucker Ellis reviewed the subpoena and withheld certain documents on the basis of attorney-client and the attorney work product privileges. Ultimately, Tucker Ellis produced the attorney work product e-mails authored by Nelson, which are the subject of

3

this litigation. After Nelson was subpoenaed for deposition, he wrote a 'clawback' letter to Tucker Ellis and *Durham* counsel, asserting the e-mails contained his privileged attorney work product and demanding they be sequestered and returned to him. Tucker Ellis did not respond to Nelson's letter.

"Nelson filed this lawsuit against Tucker Ellis, alleging claims for negligence, negligent and intentional interference with contract, negligent and intentional interference with prospective economic advantage, intentional invasion of privacy, and conversion. Nelson asserted that as a result of Tucker Ellis's production of his e-mails, his attorney work product was made available on the Internet and disseminated to over 50 asbestos plaintiffs' attorneys, interfering with his ability to work effectively with experts in the asbestos field, and ultimately resulting in his termination from his new law firm and an inability to find new employment in his practice field." (*Tucker Ellis III*, *supra*, 12 Cal.App.5th at pp. 1237–1238.)

As discussed in more depth in our previous decision (*Tucker Ellis III*, *supra*, 12 Cal.App.5th at p. 1238), Tucker Ellis initially moved to compel arbitration of Nelson's claims pursuant to an arbitration clause in Nelson's employment agreement. The trial court denied the motion, concluding the arbitration clause was procedurally and substantively unconscionable under California law. Tucker Ellis appealed this ruling, and we affirmed it. (*Nelson v. Tucker Ellis LLP* (Dec. 15, 2014, A141121) [nonpub. opn.].) Tucker Ellis then filed a special motion to strike the complaint as a strategic lawsuit against public participation pursuant to Code of Civil Procedure section 425.16 (the anti-SLAPP statute),[1] and the trial court denied the motion.

---

[1] Unless otherwise stated herein, all statutory citations are to the Code of Civil Procedure.

Tucker Ellis again appealed, and we again affirmed. (*Nelson v. Tucker Ellis LLP* (Nov. 24, 2015, A142731) [nonpub. opn.]; see *Tucker Ellis III*, *supra*, 12 Cal.App.5th at p. 1239.)

Following discovery, Nelson filed a motion for summary adjudication, seeking a determination that Tucker Ellis had a legal duty to protect his attorney work product from improper disclosure to third parties pursuant to section 2018.030.[2] On July 19, 2016, the trial court granted his motion, ruling that " 'Tucker Ellis LLP owed Plaintiff Evan C. Nelson a legal duty to take appropriate steps to ensure that work product created by Plaintiff which contains his impressions, conclusions and opinions and in [Tucker Ellis's] possession was not disclosed to others without Plaintiff's permission.' " (*Tucker Ellis III*, *supra*, 12 Cal.App.5th at pp. 1239–1240, 1248.)

Tucker Ellis responded with a petition for a writ of mandate in this court challenging the court's summary adjudication ruling. After requesting and receiving informal briefing, we temporarily stayed the matter in the lower court and issued an order to show cause. Then, after considering the parties' written pleadings, the record, and oral argument, we concluded Tucker Ellis was entitled to writ relief because Tucker Ellis, not Nelson, was the holder of the attorney work product privilege with respect to the subject materials and, thus, owed Nelson no legal duty to take appropriate steps to ensure the materials were not disclosed without his permission. (*Tucker Ellis III*, *supra*, 12 Cal.App.5th at pp. 1236, 1240, 1242.) We therefore let issue a peremptory writ of mandate directing the trial court to

---

[2] Nelson originally sought summary adjudication of multiple issues before narrowing his motion to the sole issue of whether Tucker Ellis owed him a legal duty to take the necessary precautions to protect his alleged work product.

vacate its summary adjudication order and enter a new order consistent with our decision. (*Id*. at p. 1248.)

After this court directed the trial court to vacate its prior summary adjudication ruling, Tucker Ellis moved immediately for judgment on the pleadings, arguing that, under our *Tucker Ellis III* decision, Nelson had no viable legal theory. The trial court granted Tucker Ellis's motion without leave to amend, finding each of Nelson's causes of action barred by the law of the case as established in *Tucker Ellis III* or, alternatively, by the litigation privilege codified in Civil Code section 47, subdivision (b). After Nelson unsuccessfully moved for new trial, judgment was entered in favor of Tucker Ellis, prompting this appeal.

## DISCUSSION

Nelson raises the following issues on appeal: (1) Did the *Tucker Ellis III* opinion compel the trial court to grant Tucker Ellis's motion for judgment on the pleadings? (2) Is the litigation privilege under Civil Code section 47, subdivision (b) a complete bar to Nelson's claims? (3) Was Nelson entitled to leave to amend his complaint? We address each issue below.

## I. Law of the Case.

In *Tucker Ellis III*, we considered as between Nelson and Tucker Ellis who was the holder of the attorney work product privilege codified in section 2018.030 with respect to the documents Nelson created during and in the course of his Tucker Ellis employment, which Tucker Ellis then disclosed in response to the valid out-of-state subpoena. (*Tucker Ellis III*, *supra*, 12 Cal.App.5th at pp. 1236, 1242.) After analyzing California law in light of the facts presented by the parties in connection with the summary adjudication motion, we held: (1) Under the parties' employment agreement and other firm policies in effect during Nelson's employment, "Tucker Ellis owned the

6

documents in question" (*id*. at p. 1241); (2) Tucker Ellis was the holder of the attorney work product privilege as to the documents (*id*. at p. 1242); and (3) as a result, Tucker Ellis "had no legal duty to secure Nelson's permission before disclosing the documents to others." (*Ibid*.) We therefore directed the trial court to, first, vacate its summary adjudication finding that Tucker Ellis had a legal duty to take appropriate steps to ensure the subject documents were not disclosed without Nelson's permission and, second, enter a new order consistent with our decision. (*Id*. at pp. 1236, 1248.)

After *Tucker Ellis III* was filed, Tucker Ellis immediately moved for judgment on the pleadings. The trial court granted Tucker Ellis's motion without leave to amend, concluding that Nelson could not state a viable claim given the law of the case established in *Tucker Ellis III* and, alternatively, that his claims were barred as a matter of law under the litigation privilege (Civ. Code, § 47, subd. (b)).

On appeal, Nelson contends the trial court erred in relying on *Tucker Ellis III* to grant judgment in favor of Tucker Ellis on the pleadings because he is "entitled to disprove the facts the Court treated as true in analyzing whether summary adjudication was appropriate" and "to cure any deficiencies in the complaint at this early stage through amending his Complaint." For reasons that follow, we disagree.

"Where an appellate court states in its opinion a principle or rule of law necessary to its decision, that principle or rule becomes the law of the case. (*Clemente v. State of California* (1985) 40 Cal.3d 202, 211 [219 Cal.Rptr. 445, 707 P.2d 818].) The law of the case must be adhered to both in the lower court and upon subsequent appeal. (*Ibid*.) This is true even if the court that issued the opinion becomes convinced in a subsequent consideration that the former opinion is erroneous. (*Ibid*.)" (*Santa Clarita Organization for*

7

*Planning the Environment v. County of Los Angeles* (2007) 157 Cal.App.4th 149, 156.) " ' "The rule of 'law of the case' generally precludes multiple appellate review of the same issue in a single case. . . . [Citations.]" ' [Citation.] [¶] . . . [¶] We will apply the law of the case doctrine where the point of law involved was necessary to the prior decision and was ' "actually presented and determined by the court." ' [Citation]." (*People v. Gray* (2005) 37 Cal.4th 168, 196–197.)

This doctrine also applies where the prior appeal is from a decision short of a full trial. (*Bergman v. Drum* (2005) 129 Cal.App.4th 11, 14–15.) Where there is no substantial difference between the evidence presented by the parties in connection with the previous appellate decision and the present appeal, the court's previous decision becomes the law of the case. (*Ibid.*; see *Weightman v. Hadley* (1956) 138 Cal.App.2d 831, 841 ["law of the case" applies when "the issues and facts found remain substantially the same, and has no application where the facts alleged and found are materially different from those considered on a former appeal"].)

Here, Nelson argues the "law of the case" doctrine does not apply because *Tucker Ellis III* was based on facts "necessarily . . . read in the light most favorable to Tucker Ellis." Nelson is incorrect. As stated in *Tucker Ellis III*, "a writ of mandate may issue to prevent trial of *nonactionable claims* after an erroneous decision on a motion for summary adjudication. [Citations.] Since a motion for summary adjudication 'involves pure matters of law,' we review the trial court's ruling de novo." (*Tucker Ellis III*, *supra*, 12 Cal.App.5th at p. 1240, italics added.) Thus, after finding writ relief appropriate, we concluded the evidence presented by the parties in connection with Nelson's summary adjudication motion established as a matter of law that Tucker Ellis held the work product privilege with

respect to the subject material and therefore owed no legal duty to seek Nelson's permission before disclosing it to third parties. (*Id.* at pp. 1236, 1240, 1242.) Under the authority cited above, our previous legal determination therefore constitutes the "law of the case" so long as the material facts in the record on this appeal are the same as the facts we previously considered when reaching our determination. (*Bergman v. Drum*, *supra*, 129 Cal.App.4th at pp. 18–19; *People v. Gray*, *supra*, 37 Cal.4th at pp. 196–197.)

Nelson does not identify any new or additional evidence presented to the trial court before judgment on the pleadings was entered in favor of Tucker Ellis.[3] He does identify several facts that he claims remain in dispute in this case, including: (1) whether he gave up his right to claim protection for documents containing his "mental work product" by creating documents owned by Tucker Ellis; (2) whether the subject "confidential communications" were related to the research articles written by Gradient for Tucker Ellis; and (3) whether the *Durham* subpoena "sought and received communications concerning the [Gradient] articles . . . ." Even assuming for the sake of argument these factual disputes exist, Nelson fails to demonstrate how they

---

[3] Nelson argues that he "also alleged additional facts not in the *Tucker Ellis III* record concerning his development, before his work at Tucker Ellis, of unique, proprietary and valuable theories and information," which, "taken as true, establish that, Tucker Ellis did not own [his] confidential and proprietary legal defenses, strategies and opinions relating to asbestos defense litigation, and that [he] retained his privacy interest in keeping his expertise confidential." However, as set forth in the *Tucker Ellis III* opinion, before granting writ relief to Tucker Ellis we "reviewed the parties [*sic*] written pleadings, the record, and had the benefit of oral argument." (*Tucker Ellis III*, *supra*, 12 Cal.App.5th at p. 1240.) If Nelson was aware of additional facts supporting his legal theories that were outside the parties' pleadings or the appellate record, he should have presented them to the trial court when opposing judgment on the pleadings.

9

undermine our determination in *Tucker Ellis III* that, *as a matter of law*, Tucker Ellis (and not Nelson) holds the work product privilege with respect to the subject materials. (See *Bergman v. Drum*, *supra*, 129 Cal.App.4th at pp. 18–19.) Thus, because *Tucker Ellis III* stands for a point of law actually presented and determined by this court and necessary to its holding, we conclude the trial court correctly regarded it as the law of the case when ruling on Tucker Ellis's motion for judgment on the pleadings. (*People v. Gray*, *supra*, 37 Cal.4th at pp. 196–197; see *Kowis v. Howard* (1992) 3 Cal.4th 888, 894 ["When the appellate court issues an alternative writ, the matter is fully briefed, there is an opportunity for oral argument, and the cause is decided by a written opinion. The resultant holding establishes law of the case upon a later appeal from the final judgment"].)

Remaining for our consideration, however, is whether our determination in *Tucker Ellis III* that Tucker Ellis holds the work product privilege with respect to the subject materials compels judgment on the pleadings. For this inquiry, we consider each of Nelson's causes of action in light of the following standard of review.

"A motion for judgment on the pleadings is tantamount to a general demurrer [citations], although it is not governed by statute and may be made at any time prior to a final judgment (6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, § 267, pp. 567–568). On appeal from the granting of the motion, the standard of review is the same as for a judgment of dismissal following the sustaining of a general demurrer." (*Orange Unified School Dist. v. Rancho Santiago Community College Dist.* (1997) 54 Cal.App.4th 750, 764.) "In determining the merits of a demurrer [and motion for judgment on the pleadings], all material facts pleaded in the complaint and those which arise by reasonable implication, but not conclusions of fact

10

or law, are deemed admitted by the [moving] party. [Citations.] On appeal, we do not review the validity of the trial court's reasoning but only the propriety of the ruling itself." (*Id*. at p. 757.)

A. ***Intentional Interference with Contract and Intentional Interference with Prospective Economic Advantage (Third and Fifth Causes of Action).***[4]

Nelson's third cause of action for intentional interference with contract requires evidence of: (1) a valid contract between plaintiff and a third party; (2) Tucker Ellis's knowledge of this contract; (3) Tucker Ellis's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 55.) Nelson's fifth cause of action, intentional interference with a prospective economic advantage, requires evidence of: (1) the existence between Nelson and a third party of an economic relationship containing the probability of future economic benefit to Nelson; (2) Tucker Ellis's knowledge of the relationship; (3) Tucker Ellis's intentionally wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) resulting damage. (*Roy Allan Slurry, Inc. v. American Asphalt South, Inc.* (2017) 2 Cal.5th 505, 512.)

In his complaint, Nelson alleged as to his third cause of action that Tucker Ellis intentionally interfered with his employment and representation of clients by "intentionally publicly disclosing the work product Communications," and that as a direct and proximate result he was damaged. As to his fifth cause of action, Nelson alleged on information and belief that Tucker Ellis intentionally interfered with his prospective economic

---

[4] Nelson analyzes these two causes of action together, as do we.

11

advantage (consisting of attorneys' fees earned by defending clients in asbestos litigation) by "intentionally publicly disclosing the confidential work product Communications." Nelson further alleged this public disclosure of his confidential work product "Communications was wrongful, independent of the resulting interference, because the Communications are attorney-client privileged and Nelson's 'absolute' work product, and the law and ethical rules governing the conduct of attorneys prohibit disclosure or use (and also require retrieval) of documents once a party has been notified of a claim of privilege or work product."

The trial court found Nelson could not state a claim for intentional interference with contract or prospective economic advantage as a matter of law because he did not plead and could not prove that Tucker Ellis engaged in an independently wrongful act, citing *Reeves v. Hanlon* (2004) 33 Cal.4th 1140 (*Reeves*). Nelson disputes that he is required to allege and prove an independently wrongful act in order to state viable claims for intentional interference, citing *Popescu v. Apple Inc.* (2016) 1 Cal.App.5th 39, 45 (*Popescu*).

In *Reeves* the former employer (a law firm) of several at-will employees sued the employees' current employer (also a law firm), claiming the current employer induced these employees to leave the former employer to come work for it. (*Reeves*, *supra*, 33 Cal.4th at pp. 1145–1146.) The California Supreme Court held that, because the plaintiff/former employer was alleging interference with an at-will employment relation, it was required to plead and prove the defendant/current employer engaged in an "independently wrongful act in disrupting the relationship," meaning " 'an act . . . proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard.' " (*Id*. at p. 1152.) In so holding, the court

12

distinguished economic relationships between parties to contracts that are terminable at will from relationships between parties to other legally binding contracts, explaining that " 'courts provide a damage remedy against third party conduct intended to disrupt an existing contract precisely because the exchange of promises resulting in such a formally cemented economic relationship is deemed worthy of protection from interference by a stranger to the agreement. Economic relationships short of contractual, however, should stand on a different legal footing as far as the potential for tort liability is reckoned.' [Citation.]" (*Id.* at p. 1151.)

The reviewing court in *Popescu* distinguished *Reeves* on the grounds that *Reeves* involved a plaintiff/former employer suing a current employer of at-will employees, while *Popescu* involved a plaintiff/at-will employee suing a third party for intentional interference. Concluding the lower court had erroneously interpreted and applied *Reeves* as compelling the conclusion that the plaintiff could not state a claim for intentional interference with contract, the *Popescu* court reasoned: "*Reeves* . . . concerned a type of claim that is not at issue here—a claim by a former employer whose at-will employee was hired away by a new employer. Because of the dual policy concerns of employee mobility and the promotion of legitimate competition, the California Supreme Court held in *Reeves* that the former employer had to show that the new employer's conduct in recruiting and hiring its at-will employee was independently wrongful. (*Reeves, supra,* 33 Cal.4th at pp. 1149–1153.) Those same policy considerations do not exist here. This case involves an employee—not his former employer—suing a third party for interfering with his employment agreement. We thus hold that *Reeves* does not require Popescu to allege or prove as part of his contract interference claim that Apple's conduct in interfering with his at-will employment

13

contract was independently wrongful." (*Popescu*, *supra*, 1 Cal.App.5th at p. 45.)

We respectfully disagree with our *Popescu* colleagues' reasoning. The California Supreme Court's holding in *Reeves*—requiring the plaintiff to allege and prove an independently wrongful act to state a claim for intentional interference with contract—was not based on the identity of the plaintiff but on the type of employment relationship the defendant had allegedly interfered with, to wit, an *at-will* relationship. The court explained that the economic relationship between parties to contracts that are terminable at will is distinguishable from the relationship between parties to other legally binding contracts, in that "any interference with it that induces its termination is primarily an interference with the future relation between the parties, and the plaintiff has no legal assurance of them." (*Reeves*, *supra*, 33 Cal.4th at p. 1151.) Thus, the court held that "a plaintiff may recover damages for intentional interference with an at-will employment relation under the same California standard applicable to claims for intentional interference with prospective economic advantage. That is, *to recover for a defendant's interference with an at-will employment relation, a plaintiff must plead and prove that the defendant engaged in an independently wrongful act*—i.e., an act 'proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard' [citation]—that induced an at-will employee to leave the plaintiff." (*Id.* at pp. 1152–1153.) We follow this binding case law, declining to interpret our high court's holding in the limited manner proposed by the *Popescu* court.

Accordingly, we agree with the trial court that Nelson was required to plead or prove Tucker Ellis engaged in an independently wrongful act by intentionally disclosing "confidential work product Communications" because

14

Nelson is presumptively an at-will employee of his clients under Labor Code section 2922. We further agree that, under the law of the case, Nelson cannot meet this requirement because Tucker Ellis owned and held the work product privilege as to these communications and had "no legal duty" to obtain his permission before disclosing them. (*Tucker Ellis III*, *supra*, 12 Cal.App.5th at p. 1248.) Tucker Ellis's act of disclosing its own communications to a third party in response to a valid subpoena was not wrongful. (See *Melendrez v. Superior Court* (2013) 215 Cal.App.4th 1343, 1353 [as the "exclusive holder of the work product privilege," an attorney "can waive the work product privilege without the consent of the client"].)

Last, we address Nelson's argument that, even if an independently wrongful act were necessary for him to state a claim for intentional interference with contract or prospective economic advantage, this requirement could be satisfied on this record because it was independently wrongful for Tucker Ellis to "deliberately and publicly produce[] materials not called for by the subpoena which were designed to make it impossible for [him] to compete with them [in the legal field] after he left the firm." According to Nelson, the fact that Tucker Ellis holds the work product privilege with respect to these materials is irrelevant to this inquiry. We again disagree.

To be independently wrongful, an act must be proscribed by " 'some constitutional, statutory, regulatory, common law, or other determinable legal standard' [citation] . . . ." (*Reeves*, *supra*, 33 Cal.4th at pp. 1152–1153.) Nelson identifies no determinable legal standard proscribing Tucker Ellis's act. Instead, he insists Tucker Ellis's intentionally produced materials outside the scope of the subpoena to "make it impossible for Nelson to practice law with other clients and firms." However, an "act is not

15

independently wrongful merely because defendant acted with an improper motive." (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1158.) And even if it were, as we previously stated, "to the extent th[e] task [of complying with requests for disclosure while preserving the privilege] involves former attorneys who created work product for current firm clients, as here, the purpose of the attorney work product privilege will be better served by allowing the firm itself—with current knowledge of ongoing litigation and client issues and in the context of the firm's ongoing attorney-client relationships—to speak with one voice regarding the assertion of the privilege." (*Tucker Ellis III*, *supra*, 12 Cal.App.5th at p. 1247.) Permitting Nelson to allege an independently wrongful act based on Tucker Ellis's assessment of whether certain information is privileged would undermine the important policy concerns underlying the attorney work product privilege.

Accordingly, we conclude the trial court correctly granted the motion for judgment on the pleadings as to the third and fifth causes of action.

## B. *Invasion of Privacy (Sixth Cause of Action).*

Nelson's invasion of privacy cause of action was premised on the allegation that Tucker Ellis "negligently and/or intentionally publicly disclos[ed] his confidential and private absolute work product." The trial court found Nelson failed to state a valid claim as to this cause "because the holder of the communications and the privilege is Tucker Ellis, not [Nelson]." This finding is correct.

Nelson's claim for invasion of privacy required him to plead and prove (1) a legally protected privacy interest; (2) reasonable expectation of privacy under the circumstances; and (3) a serious invasion of such privacy interest. (*International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 338 (*International Fed.*).)

16

"Four distinct kinds of activities have been found to violate this privacy protection and give rise to tort liability. These activities are (1) intrusion into private matters; (2) public disclosure of private facts; (3) publicity placing a person in a false light; and (4) misappropriation of a person's name or likeness." (*Moreno v. Hanford Sentinel, Inc.* (2009) 172 Cal.App.4th 1125, 1129 (*Moreno*).)

Here, we are concerned with the second type of activity—Tucker Ellis's alleged wrongful disclosure of private facts consisting of Nelson's communications with expert consultants regarding asbestos litigation defense. "The elements of this tort are ' "(1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern." ' [Citation.] *The absence of any one of these elements is a complete bar to liability.*" (*Moreno, supra*, 172 Cal.App.4th at pp. 1129–1130, italics added.)

Nelson's claim fails due to the absence of private facts. Simply put, Nelson cannot have a legally protected privacy interest or a reasonable expectation of privacy with respect to communications that he did not own or hold privileged. Nor can Tucker Ellis "serious[ly] inva[de]" a privacy interest in communications that are its own. (*International Fed., supra*, 42 Cal.4th at p. 338.) As the *Moreno* court notes, an invasion of privacy claim arises from " ' " 'the right to *define* one's circle of intimacy—to choose who shall see beneath the quotidian mask.' " . . . ' [Citation.]" (*Moreno, supra*, 172 Cal.App.4th at p. 1130; see *id.* at p. 1129 [the tort of invasion of privacy arises from "a distinct interest associated with an individual's control of the process or products of his or her personal life"].) Under the law of the case, the right to control disclosure of the allegedly confidential attorney work product communications was Tucker Ellis's alone. (*Tucker Ellis III, supra*, 12

17

Cal.App.5th at pp. 1247–1248.) Judgment on the pleadings in Tucker Ellis's favor as to this cause of action was thus correct.

**C.** ***Negligence, Negligent Interference with Contract and Negligent Interference with Prospective Economic Advantage (First, Second and Fourth Causes of Action).***

Each of Nelson's negligence causes of action was premised on his allegation that Tucker Ellis owed "ethical duties, statutory duties and a duty of care to take reasonable steps to prevent public disclosure of [his] confidential work product Communications." Thus, given our previous holdings that the confidential work product communications were Tucker Ellis's work product and that Tucker Ellis had no legal duty to secure Nelson's permission before disclosing them (*Tucker Ellis III, supra,* 12 Cal.App.5th at pp. 1242, 1248), the trial court correctly found Nelson failed to state a claim for negligent breach of duty under these three theories.[5]

Nelson responds that the facts alleged in his complaint trigger ethical or professional duties distinct from the attorney work product privilege that were owed by Tucker Ellis, including a fiduciary duty to protect its client's privacy interests, a duty to "preserve the client's right and ability to continue to use Nelson as its attorney of choice," a duty of good faith and fair dealing with respect to Nelson's right to practice law, and a duty to protect his right

---

[5] The elements of negligent interference with contract or prospective economic advantage are (1) the existence of a valid contractual relationship or other economic relationship between the plaintiff and a third party containing the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge (actual or construed) of the relationship; (3) the defendant's knowledge (actual or construed) that the relationship would be disrupted if the defendant failed to act with reasonable care; (4) the defendant's failure to act with reasonable care; (5) actual disruption of the relationship; and (6) resulting economic harm. (*Venhaus v. Shultz* (2007) 155 Cal.App.4th 1072, 1077–1078; *SCEcorp v. Superior Court* (1992) 3 Cal.App.4th 673, 677.)

18

to be protected from public scrutiny as he developed defense strategies for his clients.  Nelson's argument fails.

First, as to the first two of these proposed duties, even assuming for the sake of argument that Tucker Ellis owed a duty to protect or preserve a client's right to choose a particular lawyer or to maintain its privacy interests, it would be for the client, not Nelson, to assert this right in court. (See *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 936 ["In general, California law does not give a party personal standing to assert rights or interests belonging solely to others"].)  Nelson responds that "[t]he person who was the lawyer at the time of the confidential communication" may assert the attorney-client privilege on the client's behalf.  (Evid. Code, § 954, subd. (c).)  While this proposition may be correct as a general matter, we have already held that Tucker Ellis, not Nelson, was the attorney and holder of the work product privilege with respect to the alleged confidential materials.  (*Tucker Ellis III*, *supra*, 12 Cal.App.5th at p. 1242.)

Moreover, with respect to Nelson's proposed duties relating to his law practice or development of defense strategies for clients, as we just explained our previous opinion held that Tucker Ellis owed Nelson no legal duty to secure his permission before disclosing the subpoenaed materials. (*Tucker Ellis III*, *supra*, 12 Cal.App.5th at p. 1248.)  Notwithstanding Nelson's repeated attempts to reframe Tucker Ellis's legal duties, the essence of his complaint relates to the firm's handling of these subpoenaed materials. Accordingly, his attempts fail for the same reason identified above.  Under the binding law of the case, Tucker Ellis alone had the right to assert—or not to assert—the attorney work product privilege with respect to the material subpoenaed in the *Durham* litigation.  (*Id.* at pp. 1242, 1248.)  " 'Litigants are not free to continually reinvent their position on legal issues that have been

19

resolved against them by an appellate court.' " (*Joyce v. Simi Valley Unified School Dist.* (2003) 110 Cal.App.4th 292, 304.)

### D.    *Conversion (Seventh Cause of Action).*

Nelson alleged Tucker Ellis intentionally took possession of his work product materials and converted them to its use, thereby substantially interfering with his right of possession.  The trial court found Nelson failed to state a claim for conversion "because [he] does not own the communications that form the basis of his complaint."  The trial court's finding is correct under the law of the case.  (*Tucker Ellis III*, *supra*, 12 Cal.App.5th at p. 1241 ["Tucker Ellis owned the documents in question"].)  To prevail on a claim of conversion, the plaintiff must prove " ' "an ownership or right to possession of the property at the time of the conversion." ' " (*Shopoff & Cavallo LLP v. Hyon* (2008) 167 Cal.App.4th 1489, 1507.)

Accordingly, because the confidential communications at the heart of Nelson's complaint were not his property, the trial court properly granted Tucker Ellis's motion for judgment on the pleadings as to this cause of action.

## II.    Litigation Privilege.

The trial court granted Tucker Ellis's motion for judgment on the pleadings on the alternative ground that each of Nelson's causes of action was barred by the litigation privilege under Civil Code section 47, subdivision (b).[6]  Under this privilege, which courts interpret broadly, defendants are immunized from tort liability for any communication " '(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and

---

[6] Civil Code section 47, subdivision (c) was amended effective January 1, 2019.  (Stats. 2018, ch. 82, § 1, No. 2, Deering's Adv. Legis. Service, pp. 722–723.)  Subdivision (b) of the statute, which is applicable here, was not amended.  (*Ibid*.)

(4) that [has] some connection or logical relation to the action.' " (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241; see *Silberg v. Anderson* (1990) 50 Cal.3d 205, 216 [the litigation privilege is absolute in nature, applying "to *all* publications, irrespective of their maliciousness"] (*Silberg*).) The primary purpose of this privilege is " 'to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions.' " (*Action Apartment Assn., Inc.*, *supra*, at p. 1241.)

Here, the tortious conduct at the heart of Nelson's lawsuit is Tucker Ellis's disclosure of attorney work product communications to a third party in response to a valid subpoena commissioned by an out-of-state court. On its face, this conduct is based on (1) communications (disclosure of attorney work product); (2) made in judicial proceedings (the *Durham* litigation); (3) by a participant authorized by law (Tucker Ellis, as the subpoenaed party); (4) to achieve the object of the litigation (to assist the plaintiff/subpoenaing party to advance its case); and (5) that have some connection to the case (the subpoenaed communications reflected Tucker Ellis's involvement in the funding and/or the creation of defense expert articles). Accordingly, the trial court correctly found the litigation privilege was a complete bar to this lawsuit.

Nelson unconvincingly argues at least some of Tucker Ellis's conduct was noncommunicative in nature and therefore falls outside the scope of the litigation privilege. The relevant question when applying this privilege is whether the gravamen of Nelson's action was communicative or noncommunicative conduct. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1061 (*Rusheen*).) In this case the conduct was communicative. Nelson alleged he was aggrieved by Tucker Ellis's disclosure in response to a valid subpoena of

21

communications he created in the course of his legal representation of clients, conduct falling squarely within the scope of the privilege. (See *Foothill Federal Credit Union v. Superior Court* (2007) 155 Cal.App.4th 632, 635 [defendant's disclosure of documents in response to a valid discovery request was communicative conduct protected by the litigation privilege] (*Foothill*).) While Nelson focuses on allegations relating to Tucker Ellis's failures— mainly, its failures to withhold confidential materials in its subpoena response, to produce them under a protective order and to comply with its implied agreement with him to withhold the materials—these failures to act when responding to the subpoena were necessary corollaries of Tucker Ellis's act of disclosing material, which cannot be distinguished for purposes of our analysis. To hold otherwise would thwart application of the litigation privilege when in fact we are supposed to broadly apply it in order to further the important public policies that support it. (See *Rusheen*, *supra*, 37 Cal.4th at p. 1065 ["the litigation privilege extends to noncommunicative acts that are necessarily related to the communicative conduct"].)

Nelson attempts to distinguish *Foothill*, a case with facts quite similar to ours, in which the appellate court held that the litigation privilege was a complete bar to the plaintiffs' invasion of privacy claim that was based on the defendant's act of responding to a subpoena in an allegedly overbroad manner. (*Foothill*, *supra*, 155 Cal.App.4th at p. 634.) There, the relevant records (consumer bank records) were produced pursuant to Code of Civil Procedure section 1985.3, a statute that authorizes the production of bank records after the consumer receives notice and the opportunity to object. (*Id.* at p. 639.) According to Nelson, unlike in our case, the *Foothill* court's application of the litigation privilege did not contravene the relevant statute, Code of Civil Procedure section 1985.3. Nelson reasons: "Code of Civil

22

Procedure section 2018.030 [attorney work product privilege] and Civil Code section 3426.11 [trade secrets privilege] contain the intent to prevent discovery and the specific guarantee of complete confidentiality missing in Code of Civil Procedure section 1985.3." Thus, he concludes, "the litigation privilege cannot trump a later-enacted statute that explicitly prohibits the act for which Tucker Ellis seeks the protection of the litigation privilege."

Nelson's argument is yet another attempt to relitigate our previous holding, binding in this case, that Tucker Ellis and not Nelson is the holder of the attorney work product privilege with respect to the relevant communications. (*Tucker Ellis III*, *supra*, 12 Cal.App.5th at p. 1248.) As such, the litigation privilege is not being applied to permit an act prohibited by statute because Tucker Ellis, the owner of the privileged materials and holder of the work product privilege, had the right to waive the privilege and produce them. (*Melendrez v. Superior Court*, *supra*, 215 Cal.App.4th at p. 1353; see *People v. Superior Court* (*Laff*) (2001) 25 Cal.4th 703, 713 ["the custodian of materials protected by an evidentiary privilege *owes a duty to the holder of the privilege* to claim the privilege and to take actions necessary to ensure that the materials are not disclosed improperly" (italics added)]; Civ. Code, § 3426.11, 1st par. ["the voluntary, intentional disclosure of trade secret information, *unauthorized by its owner*, to a competitor or potential competitor of the owner of the trade secret information . . . is not privileged" (italics added)].)

Last, we briefly address Nelson's claim that Tucker Ellis's subpoena response did not fulfill a necessary or useful step in the *Durham* litigation because the material was inadmissible and irrelevant. As in *Foothill*, the documents were produced to provide the subpoenaing party with potential evidence in the *Durham* litigation. (*Foothill*, *supra*, 155 Cal.App.4th at p.

23

636.) Nothing more was required to meet the litigation privilege standard. (See *Silberg*, *supra*, 50 Cal.3d at pp. 219–220 ["The requirement that the communication be in furtherance of the objects of the litigation is, in essence, simply part of the requirement that the communication be connected with, or have some logical relation to, the action, i.e., that it not be extraneous to the action"].)

As the California Supreme Court in *Rusheen* explained, "with the litigation privilege, 'it is desirable to create an absolute privilege . . . not because we desire to protect the shady practitioner, but because we do not want the honest one to have to be concerned with [subsequent derivative] actions . . . .' [Citation.] . . . Thus, the 'salutary policy reasons for an absolute [litigation] privilege supersede individual litigants' interests in recovering damages for injurious publications made during the course of judicial proceedings.' " (*Rusheen*, *supra*, 37 Cal.4th at p. 1064.) "[A]pplication of the litigation privilege gives the recipient of a subpoena duces tecum freedom to respond to that subpoena without fear of being harassed subsequently by derivative tort actions." (*Foothill*, *supra*, 155 Cal.App.4th at p. 637.)

Accordingly, we affirm the trial court's application of this privilege to bar Nelson's tort claims directed at Tucker Ellis's communicative conduct as a participant in the *Durham* litigation. Judgment on the pleadings was proper.

## III. Denial of Leave to Amend.

" ' "Where the complaint is defective, '[i]n the furtherance of justice great liberality should be exercised in permitting a plaintiff to amend his [or her] complaint . . . .' " ' [Citation.] We determine whether the plaintiff has shown 'in what manner he [or she] can amend [the] complaint and how that amendment will change the legal effect of [the] pleading.' [Citation.] '[L]eave

24

to amend should *not* be granted where . . . amendment would be futile.' [Citations.]" (*Redfearn v. Trader Joe's Co.* (2018) 20 Cal.App.5th 989, 996–997.)

Here, the trial court correctly denied Nelson leave to amend his complaint when granting Tucker Ellis's motion for judgment on the pleadings because amendment would have been futile. Nelson's legal theories were soundly rejected by our decision in *Tucker Ellis III*, which is law of the case, and even if they had not been, the litigation privilege serves as a complete bar to his claims. Moreover, Nelson has not identified any additional facts that he can allege to overcome these legal barriers. (See *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 ["plaintiff has the burden of proving that an amendment would cure the defect"].) The judgment therefore stands.

## DISPOSITION

The judgment is affirmed.

_____

Jackson, J.

WE CONCUR:


_____

Siggins, P. J.


_____

Fujisaki, J.


A153661/_Nelson v. Tucker Ellis, LLP_

26

A153661/Nelson v. Tucker Ellis, LLP

**Trial Court:**      Superior Court of the City and County of San Francisco

**Trial Judge:**      Gail Dekreon, J.

**Counsel:**      Kerr & Wagstaffe, Wagstaffe, von Loewenfeldt, Busch & Radwick, James M. Wagstaffe, Michael von Loewenfeldt, Frank Busch; Lincoln Law and Tessa Mayer Santiago for Plaintiff and Appellant.

Long & Levit, Joseph P. McMonigle, Kathleen M. Ewins, David S. McMonigle and Jonathan Rizzardi for Defendant and Respondent.