[No. H008871. Sixth Dist. Jan. 7, 1992.]

PAUL ADAMS et al., Petitioners, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
MAI THU TUYET NGUYEN VU, Real Party in Interest.

**COUNSEL**

Paul F. Adams and Scott A. Sommer, in pro. per., Joaquin Celaya, Don Branner and Joseph A. LaMantia for Petitioners.

No appearance for Respondent.

Joseph Mayen for Real Party in Interest.

**OPINION**

ELIA, J.—Petitioners seek a writ of mandate to compel the trial court to sustain a demurrer to real party's claims of abuse of process and malicious prosecution. Petitioners Paul Adams, Scott Sommer, John Christian and Tobin & Tobin are attorneys who represent petitioners Duane and Amelia Wiseman in a civil action in Monterey County. The attorney petitioners are also the defendants in real party Vu's lawsuit for abuse of process and malicious prosecution brought in Santa Clara County. The attorneys contend that (1) the refusal of the Santa Clara County Superior Court to sustain their demurrer to Vu's tort lawsuit is incorrect, and (2) that requiring them to defend this lawsuit will materially interfere with their professional relationship with their clients, the Wisemans, in the Monterey County litigation. We agree with both contentions, for reasons we will state. We will issue the writ because potential destruction of the professional relationship between the Wisemans and their chosen counsel in ongoing litigation justifies interlocutory writ review. (See, e.g., *Meadow* v. *Superior Court* (1963) 59 Cal.2d 610, 616 [30 Cal.Rptr. 824, 381 P.2d 648]; *Golden State Glass Corp.* v. *Superior Ct.* (1939) 13 Cal.2d 384 [90 P.2d 75].)

RECORD

The attorney petitioners are individual attorneys and a law firm who represent the Wisemans in a civil lawsuit against Vu in Monterey County for damages for alleged breach of contract, fraud and other causes in connection with a real estate transaction. The attorneys are also named defendants in this lawsuit brought by Vu in Santa Clara County alleging four causes of action for malicious prosecution and abuse of process.

Vu's lawsuit is based on the premise that the attorneys acted tortiously when they attempted to intervene in criminal cases in Santa Clara and San Mateo Counties in which Vu was attempting to have felony convictions reduced to misdemeanors or expunged. During discovery in the Monterey action Vu said she had never been convicted of a felony. In fact she had been previously convicted of two felonies, in San Mateo and Santa Clara Counties, as to which she had completed probation, and her attorneys had filed motions to reduce or expunge those convictions. The Santa Clara County Superior Court granted reduction of the felony conviction pursuant to Penal Code section 17, subdivision (b)(3), and the San Mateo County Superior Court granted dismissal pursuant to Penal Code section 1203.4. (Pen. Code, § 17, subd. (b)(3) applies to offenses which can be characterized either as felonies or misdemeanors by the court and permits a misdemeanor classification of a felony on application after a grant of probation. Pen. Code, § 1203.4 permits expungement of a conviction in the interests of justice after successful completion of probation.)

After both courts granted that relief, petitioners filed motions for reconsideration in both actions seeking to bring to the attention of the respective courts Vu's alleged conduct in the fraudulent real estate sale which generated the Monterey litigation. The attorneys' alleged motive was their wish to preserve the felony convictions to impeach Vu in the civil lawsuit in Monterey. The pleading charges that they made the reconsideration motions "for the purpose of annoying [Vu], to cause [Vu] to expend further moneys on attorneys' fees to defend said motion; to cause [Vu] to experience anxiety, nervousness and loss of sleep resulting from her shame and embarrassment associated with the possibility of once again being considered a felon; and furthermore . . . with purpose of gaining collateral advantage on the pending litigation in Monterey County, . . ." Vu also charges the motive of pressuring her to "compel her to yield" in the Monterey lawsuit.

The San Mateo County Superior Court denied petitioners' motion for reconsideration without any mention of lack of standing. However the Santa Clara County Superior Court denied the motion for lack of standing.

Vu then sued petitioners for malicious prosecution and abuse of process in Santa Clara County. By minute order that court has overruled petitioners' demurrers to causes of action for abuse of process and has sustained, but with leave to amend, demurrers to causes of action for malicious prosecution.

## CONTENTIONS

Petitioners say this order is error because there can be no malicious prosecution, since petitioners neither instituted any action nor did Vu obtain a favorable termination. They argue the motion for reconsideration is not an independent claim on which a claim of malicious prosecution can be based. The abuse of process claims are argued to be deficient because the reconsideration motions are privileged as publications in a judicial proceeding under Civil Code section 47. Petitioners also argue that the abuse of process claims are deficient because petitioners did not initiate any action against Vu, she did not receive a favorable result in the criminal proceeding, and the motion for reconsideration was not an independent action upon which a claim of abuse of process can be based. ■ However, we do not consider these arguments as relevant to the validity of the abuse of process claims; these arguments all go to the claim for malicious prosecution but are not relevant to the claim of abuse of process, a tort which does not depend on initiation of a lawsuit or on its outcome but rather consists of use of legal process in a wrongful manner with an ulterior motive. (*Abraham* v. *Lancaster Community Hospital* (1990) 217 Cal.App.3d 796, 824 [266 Cal.Rptr. 360].)

We agree with petitioners' justification for writ relief, that the existence of the malicious prosecution and abuse of process lawsuit will drive a wedge between petitioners and the Wisemans in the Monterey County litigation. The potential deprivation of counsel for the Wisemans in the Monterey lawsuit is a sufficient justification for writ relief.

Vu's response to petitioners' arguments does not contend that writ review is not justified. She does argue that the torts have been adequately alleged. First, she says petitioners had no standing to intervene in the criminal actions in which they sought reconsideration. That lack of standing, she argues, makes their activities in the lawsuit vulnerable to abuse of process claims and denies them any claim of privilege. Second, she argues that their motions for reconsideration constitute malicious prosecutions because, due to the lack of standing, the actions were malicious.

DISCUSSION

## I. Malicious Prosecution

■ The tort of malicious prosecution requires the initiation of a full-blown action as well as its favorable termination for the malicious prosecution plaintiff; subsidiary procedural actions within a lawsuit such as an application for a restraining order or for a lien will not support a claim of malicious prosecution. (See 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 439, p. 522; *Lossing* v. *Superior Court* (1989) 207 Cal.App.3d 635, 639 [255 Cal.Rptr. 18]; *Green* v. *Uccelli* (1989) 207 Cal.App.3d 1112, 1120 [255 Cal.Rptr. 315]; *Silver* v. *Gold* (1989) 211 Cal.App.3d 17, 24 [259 Cal.Rptr. 185].) The reason the courts have held that a malicious prosecution action cannot be grounded upon actions taken within pending litigation is that permitting such a cause of action would disrupt the ongoing lawsuit by injecting tort claims against the parties' lawyers and because the appropriate remedy for actions taken within a lawsuit lies in the invocation of the court's broad powers to control judicial proceedings. (See *Lossing* v. *Superior Court, supra,* 207 Cal.App.3d at p. 639.)

■ Here that reasoning does apply, for slightly different reasons. The motions for reconsideration were not made in the ongoing lawsuit between the Wisemans and Vu and therefore there is less direct interference in the attorney client relationships in that lawsuit. Nevertheless, plainly those motions were in pursuit of the Wisemans' interests in the Monterey lawsuit, and to ground a malicious prosecution action upon those motions would disrupt if not destroy the ability of petitioners to represent the Wisemans in that lawsuit. Accordingly similar policy considerations govern this matter as were applied in the *Lossing* and *Green* cases. Also, the San Mateo and Santa Clara courts did have inherent judicial power over the proceedings before them, and those powers provided a remedy to Vu for any filings made by petitioners in those lawsuits. Indeed, in Santa Clara County the court did dismiss the motion for reconsideration for lack of standing. It follows that just as in the cases cited above, the courts here had broad inherent powers sufficient to control any problems generated by petitioners' making of the motions for reconsideration.

We conclude that the mere making of those motions in the criminal cases is not independent action and cannot constitute initiation of lawsuits against Vu for purposes of defining the tort of malicious prosecution. The trial court should have sustained the demurrer to those claims without leave to amend.

## II. Abuse of Process

■ The tort of abuse of process, however, may be founded upon a subsidiary activity within the lawsuit. Here an available defense, at the

pleading stage, is the claim of judicial privilege. The privilege of Civil Code section 47, subdivision (b)(2) is very broad, to protect publications or broadcasts made in any judicial proceeding. (See *Silberg* v. *Anderson* (1990) 50 Cal.3d 205 [266 Cal.Rptr. 638, 786 P.2d 365].) To be privileged, communications in a lawsuit must be made by litigants "or other participants authorized by law." (*Id.* at p. 212.) Vu argues that petitioners' lack of standing makes them unauthorized participants who cannot claim the privilege.

However, the privilege is not restricted to the actual parties to the lawsuit but need merely be connected or related to the proceedings. (See *Profile Structures, Inc.* v. *Long Beach Bldg. Material Co.* (1986) 181 Cal.App.3d 437, 442 [226 Cal.Rptr. 192], hereafter *Profile Structures*.) Obviously there is some relationship between the evidence of fraudulent behavior which petitioners attempted to present to the criminal courts and the proceedings in progress there for reduction or expungement of criminal convictions. Such proceedings are addressed to the court's discretion and therefore depend on a showing of good behavior since the conviction. An attempt to demonstrate that the convicted person's behavior has not been good is therefore rationally connected to the proceedings.

Were it not for petitioners' lack of standing to make the reconsideration motions, the motions would clearly be privileged. Thus Vu does not argue that if the People had offered the tendered evidence they could be sued for abuse of process. The narrow issue is whether lack of standing destroys the claim of judicial privilege for actions taken in a lawsuit.

The defendant may rely upon the defense of judicial privilege, Civil Code section 47, provided that there is some reasonable connection between the act claimed to be privileged and the legitimate objects of the lawsuit in which that act took place. The privilege is broadly applied to protect most publications within lawsuits provided there is some connection between the lawsuit and the publication. (*Profile Structures, supra,* 181 Cal.App.3d at p. 442.) Any doubt as to whether the privilege applies is resolved in favor of applying it. (*Ibid.*; *Financial Corp. of America* v. *Wilburn* (1987) 189 Cal.App.3d 764, 772 [234 Cal.Rptr. 653]; *Thornton* v. *Rhoden* (1966) 245 Cal.App.2d 80, 93 [53 Cal.Rptr. 706, 23 A.L.R.3d 1152].)

██ We believe that the judicial privilege protects the reconsideration motions made here, despite the possible lack of standing. We see no reason why mere lack of standing should have the effect of necessarily vitiating the privilege. The movant's lack of standing can only be relevant to the issue of privilege in two ways.

First, lack of standing could constitute such lack of connection with the lawsuit as to make a motion tortious, as for instance if a complete stranger to the action filed irrelevant but scurrilous matter in a proceeding. The lack of connection, not the lack of standing, would be the reason for denying the privilege in such a case. But here, as pointed out, there was ample connection; relevant evidence was offered; but arguably the wrong party did the offering. Accordingly the reason for denying the privilege—lack of connection with the proceeding—does not apply here.

Second, standing could be relevant in the sense that lack of standing could be the reason a filing in an action was unwarranted or "wrongful." But the lack of standing, though making the filing "wrongful," does not necessarily vitiate the privilege. Cases hold that the judicial privilege applies broadly to publications in a proceeding that are connected in some way to that proceeding, to protect the rights of litigants and interested parties to communicate with the court. (See *Silberg* v. *Anderson, supra,* 50 Cal.3d at pp. 211-212.) Here, the connection exists, and therefore the privilege applies. Further, it is not even absolutely clear that the movants lacked standing, since only one of the two courts actually denied the motion on that ground. Accordingly the allegations of abuse of process are fatally defective, and the demurrer should have been sustained.

An independent argument here is that regardless of privilege, the tort of abuse of process is not adequately alleged because no misuse of process is described.

█ The tort of abuse of process has two elements: there must be wrongful *use* of process, not merely a request for or initiation of process—and second, the act complained of must involve the use of *process*. (See generally Prosser & Keeton, Torts (5th ed. 1984) Abuse of Process, § 121, pp. 897-898.)

█ Process is action taken pursuant to judicial authority. It is not action taken without reference to the power of the court. Thus, serving upon plaintiff a false notice that a bench warrant had been issued is not process, because in making the false statement defendant took no action pursuant to court authority. (*Carney* v. *Rotkin, Schmerin & McIntyre* (1988) 206 Cal.App.3d 1513, 1526 [254 Cal.Rptr. 478].)

█ Merely obtaining or seeking process is not enough; there must be subsequent abuse, by a misuse of the judicial process for a purpose other than that which it was intended to serve. (Rest.2d Torts, Abuse of Process (1981) § 682; *Oren Royal Oaks Venture* v. *Greenberg, Bernhard, Weiss &*

*Karma, Inc.* (1986) 42 Cal.3d 1157, 1168 [232 Cal.Rptr. 567, 728 P.2d 1202]; *Spellens* v. *Spellens* (1957) 49 Cal.2d 210, 231 [317 P.2d 613].) The gist of the tort is the improper use of the process *after it is issued.* (E.g. *Spellens* v. *Spellens, supra,* 49 Cal.2d at p. 231.) Here all that is described is a motion to prevent reduction of felonies to misdemeanors. That motion did not result in the issuance of any process of the court which was then abused. It produced no act of judicial authority, no writ or order which was then misused. Privileged or not, such activity falls short of the tort of abuse of process, which most generally consists of acts exterior to the lawsuit such as attempted extortion or pressure on a debtor by misuse of court orders. (See generally Prosser & Keeton, Torts *supra,* Abuse of Process, § 121, p. 898.) As Prosser and Keeton point out, although abuse of process may consist of a threat that process will be invoked, and therefore could also consist of an attempt to invoke such process, process must in fact issue at the defendant's behest. (*Ibid.*) Here the movants did not succeed and obtained no process. Therefore arguably they cannot be guilty of abuse of process.

We have located no case on the narrow issue presented here, but certain analogies exist. One out-of-state decision holds that an affidavit sent to a regulatory department requesting appropriate discipline is not "process" for purposes of the tort. (*Julian J. Studley, Inc.* v. *Lefrak* (1977) 41 N.Y.2d 881 [393 N.Y.S.2d 980, 362 N.E.2d 611]; see Prosser & Keeton, Torts, *supra,* Abuse of Process, § 121, p. 898, fn. 17.) The attempt to prevent reduction of the felony conviction here is similar to a request for discipline as in the New York decision; both are attempts to persuade a tribunal to inflict, or not to abate, punishment or unpleasant consequences for an offense. The analysis is somewhat different, in that there was no judicial tribunal involved in the New York case, whereas here there was an attempt to invoke judicial process. Nevertheless the results are substantively similar.

Also, a Maine case dealing with the standing of taxpayers to bring a bill against the corporate government observed that in the absence of statutory restrictions on standing, there is no substantial reason why such an action should not be brought, and that " '[t]he court may be safely trusted to prevent the abuse of process in such cases.' " (*Blodgett* v. *School Administrative District #73* (Me. 1972) 289 A.2d 407, 410.) The Maine court was not actually dealing with a claim of abuse of process, but its observation is pertinent here. ■ The reason for allowing an action for abuse of process is partly that the court cannot control the misuse of its process for ulterior ends since it is not cognizant of the facts constituting the abuse, which often takes place outside the courtroom after the process has issued. But the kind of "abuse" we have when persons without standing intervene in lawsuits is well within the scope of the court's power to control. The court can readily

either deny standing entirely, or it can allow intervention but control the scope of that intervention. Either way, there is nothing pernicious or beyond the scope of the court's control in the attempt to intervene by persons with questionable standing. Accordingly that attempt in itself need not give rise to tort remedies.

If we were to hold otherwise, any attempt to intervene in a lawsuit could result in an abuse of process action, an undesirable result. There should be an actionable tort only when the attempt is so misguided that there is no rational connection to the lawsuit; otherwise attempts to invoke judicial jurisdiction are privileged. We therefore hold that lack of standing does not operate ipso facto to deny the normal defenses to a claim of abuse of process. Here one such defense, the judicial privilege, plainly applies, and additionally, the motions are not actionable because there was no subsequent misuse of process and therefore no actionable wrong is alleged.

Since the complaint shows on its face that the elements of a cause of action for abuse of process are not met and since it also shows that the judicial privilege applies, the court should have sustained petitioners' demurrer to those claims. (*Profile Structures, supra,* 181 Cal.App.3d at p. 441.)

## DISPOSITION

Real party in interest has been notified that a peremptory writ in the first instance could be issued here, and she has filed opposition. The peremptory writ of mandate will issue in the first instance. (Code Civ. Proc., § 1088; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-182 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a writ of mandate issue as prayed, ordering the respondent superior court to vacate its order disposing of petitioners' demurrers, and instead to make a new and different order sustaining the demurrers without leave to amend to all causes of action of real party's complaint. Petitioners as prevailing parties shall have costs.

Agliano, P. J., and Bamattre-Manoukian, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied April 1, 1992.