Filed 8/27/21 (unmodified opn. attached)

CERTIFIED FOR PARTIAL PUBLICATION[*]


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| ANDY KIM,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>R CONSULTING & SALES, INC. et al.,<br><br>    Defendants and Respondents. | D076923<br><br>(Super. Ct. No. 37-2019-00023850-CU-MC-CTL)<br><br>ORDER MODIFYING OPINION<br><br>[**NO CHANGE IN JUDGMENT**] |


THE COURT:

It is ordered that the opinion filed on July 30, 2021, be modified as follows:

On page 16, second sentence of the first full paragraph after part II.B, change "against" to "in favor of" so the sentence reads:

Were we to do so, we would nonetheless affirm the judgment in favor of R Consulting and Michel because Kim failed to provide a complete record for us to review.

---

[*]    Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part II.B.

There is no change in the judgment.

HUFFMAN, Acting P. J.

Copies to:  All parties

CERTIFIED FOR PARTIAL PUBLICATION*


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| ANDY KIM, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> R CONSULTING & SALES, INC., et al., <br><br> Defendants and Respondents. | D076923 <br><br><br><br> (Super. Ct. No. 37-2019-00023850-CU-MC-CTL) |

APPEAL from judgments of the Superior Court of San Diego County, Richard E. L. Strauss, Judge. Affirmed.

Paul N. Tauger; ONE and Peter R. Afrasiabi for Plaintiff and Appellant.

Neil, Dymott, Frank, McCabe & Hudson and Matthew R. Souther for Defendants and Respondents R Consulting & Sales, Inc., Raquel Michel, and Lance Ricotta.

---

\* Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part II.B.

Klinedinst, Daniel S. Agle and Robert M. Shaughnessy for Defendants and Respondents Michael J. Mason, Paul S. Metsch, and Metsch & Mason, LLP.

INTRODUCTION

In May 2019, Andy Kim filed a lawsuit against law firm Metsch & Mason, LLP, its partners Paul S. Metsch and Michael J. Mason (collectively, the law firm defendants), and their clients R Consulting & Sales, Inc. (R Consulting), Raquel Michel, and Lance Ricotta for malicious prosecution, abuse of process, and intentional infliction of emotional distress. In his suit, Kim alleged the defendants wrongfully initiated contempt charges in connection with their enforcement of a civil judgment against him in *R Consulting v. Info Tech et al.* (Super. Ct. San Diego County, 2015, No. 37-2015-00002561-CU-BC-CTL.) The defendants filed motions to strike the complaint under Code of Civil Procedure[1] section 425.16, the anti-SLAPP statute, and the court granted the motions and entered judgments against Kim. Kim appeals the court's grant of the anti-SLAPP motions, contending: (1) an order to show cause regarding contempt can form the basis of a malicious prosecution action; (2) the trial court erred in concluding that Kim could not show a probability of success on his malicious prosecution claim because it applied an incorrect standard to determine whether the defendants had probable cause to seek contempt; and (3) the defendants acted maliciously by continuing to prosecute the contempt action following

---

[1] Further unspecified statutory references are to the Code of Civil Procedure.

2

our decision in *R Consulting & Sales, Inc. v. Info Tech Corporation et al.* (Jan. 18, 2019, D072492) [nonpub. opn.].

We conclude that the defendants' motion for an order to show cause (OSC) re contempt does not form a basis for a malicious prosecution action here, preventing Kim from demonstrating a probability of success on the merits, and we will affirm the judgments in favor of the law firm defendants, R Consulting, and Michel on that basis. Because we conclude an OSC re contempt does not form a basis for a malicious prosecution action, we do not reach Kim's arguments that the court applied an incorrect standard in reaching its decision or that defendants acted maliciously in pursuing contempt. Further, because Kim failed to provide a complete record on appeal, even were we to reach the second and third issues, we would be unable to fully evaluate the judgment in favor of R Consulting and Michel, and we would affirm that order and judgment on that basis. Kim did not file a notice of appeal regarding the order or judgment in favor of Ricotta, so we lack jurisdiction to entertain any challenge regarding Ricotta. (Cal. Rules of Court, rule 8.104(b); *Van Beurden Ins. Servs. v. Customized Worldwide Weather Ins. Agency* (1997) 15 Cal.4th 51, 56.)

I.

BACKGROUND AND PROCEDURAL HISTORY

A. *The Underlying Lawsuit*

In January 2015, R Consulting sued Kim and his company Info Tech Corporation (Info Tech) for breach of contract, alleging they failed to pay airplane lease payments.[2] Kim and Info Tech cross-complained, alleging

---

[2] The facts in this section are taken from *R Consulting & Sales, Inc. v. Info Tech Corporation et al.*, *supra*, D072482, an appeal regarding an earlier lawsuit between the same parties.

3

among other things that R Consulting and certain individuals defrauded them by making false representations about the aircraft. In April 2016, R Consulting moved to compel compliance with inspection demands, seeking access to e-mail stored on some of the Info Tech servers. In connection with this motion, the court ordered Kim to produce the documents and issued monetary sanctions. By November 2016, Kim had not provided the documents or access to the servers. Once R Consulting finally accessed the server, it discovered the server was inoperable. It sought issue, evidentiary, or terminating sanctions against defendants, asserting that defendants had intentionally sabotaged the servers to prevent the collection of the information necessary to prosecute the complaint and defend against the cross-complaint. The court granted terminating sanctions.

Kim and Info Tech timely appealed that decision.

### B. *Postjudgment Collection Litigation*

Following that judgment, R Consulting and its law firm, Metsch & Mason LLP, began collection proceedings. The postjudgment litigation continued throughout 2017 and 2018, and as part of it, Kim was required to participate in judgment debtor examinations. In January 2018, the trial court imposed a turnover order, requiring Kim to supply copies of his paychecks, and it also ordered Kim to pay 25 percent of his disposable income from his employers.

R Consulting accused Kim of failing to cooperate, and the law firm, on behalf of R Consulting, filed a motion for an OSC regarding contempt against Kim under section 1209, arguing Kim willfully failed to appear at four judgment debtor examinations, violated a salary turnover order, and committed perjury. Attorney Michael Mason's supplemental declaration alleged five charges: (1) Kim failed to appear at judgment debtor exams on

4

November 7, 2017, January 5, 2018, July 13, 2018, and October 12, 2018; (2) Kim delayed in providing payment records and failed to provide information about the receipt of a $25,000 payment issued by an employer; (3) Kim failed to provide payment records from two employers, IT Source and Emajee, then turned over funds which accounted for only 25 percent of Kim's earnings from one of the employers; (4) Kim failed to supply dated and legible payment records from employer IT Source; and (5) Kim failed to provide any payment records from employer Emajee.

The trial court granted R Consulting's motion and set an OSC for contempt, at which time the court planned to arraign Kim on the charges and set a date for trial on contempt. It instructed R Consulting to prepare an OSC setting forth charges of contempt. The court subsequently issued an order granting the motion for an OSC at which Kim would need to show cause as to why he should not be held in civil contempt.

## C. *The Earlier Appeal*

R Consulting used the same allegations as a basis for its motion to dismiss Kim's appeal of the terminating sanctions, arguing the disentitlement doctrine should have prevented him from seeking the appeal. Specifically, R Consulting contended in its motion to dismiss that Kim materially failed to comply with his obligations during the judgment enforcement process by failing to appear at four court-ordered judgment debtor exams, violated a salary turnover order, committed perjury at the judgment debtor examinations, and failed to file individual tax returns since 2008. R Consulting also separately argued there was substantial evidence to support the trial court's finding of spoliation of evidence and terminating sanctions.

5

On January 18, 2019, a panel of this court issued its unpublished opinion in *R Consulting & Sales, Inc. v. Info Tech Corporation et al.*, *supra*, D072492. We declined to exercise our discretionary power to dismiss the appeal and addressed the issues on which R Consulting based its request for dismissal. We concluded that "[a]s frustrating as Kim's behavior and testimony have been during the judgment debtor process, dismissal of defendants' appeal [was] not the appropriate remedy."

We also concluded there was substantial evidence to support the court's imposition of a termination sanction due to its determination that Kim had engaged in spoliation, and we affirmed the judgment.

D. *The Contempt Trial*

The civil contempt trial proceeded in R Consulting's case against Kim on April 15, 2019. At the outset of the proceeding, the trial court dismissed counts two through five, all of which related to the turnover order, for failure to include language required by section 699.040, subdivision (c). Following R Consulting's presentation of evidence, Kim requested dismissal of the remaining count, which related to his alleged failures to appear at the four debtor examinations. The trial court found Kim not guilty of contempt and dismissed all charges.

E. *Kim's Suit for Malicious Prosecution*

In May 2019, Kim filed the present suit against R Consulting, Michel, Ricotta, Mason & Metsch LLP, and Mason and Metsch individually, alleging malicious prosecution, abuse of process, and intentional infliction of emotional distress. The causes of action were all based on the contempt charges in the earlier lawsuit.

The law firm defendants filed a motion to strike the complaint under section 425.16, the anti-SLAPP statute. The remaining defendants answered

6

the complaint, and R Consulting and Michel filed a separate anti-SLAPP motion to strike from the one Ricotta filed.[3]

In their motion to strike, the law firm defendants argued that contempt proceedings could not form the basis of a malicious prosecution charge because contempt is a subsidiary procedural action. The trial court declined to determine whether an OSC regarding contempt could provide a basis for malicious prosecution, but it granted the law firm defendants' motion, dismissed the complaint, and entered judgment in their favor because it concluded that Kim could not show a probability of prevailing on his claim, as he failed to show a lack of probable cause to initiate the contempt proceedings. Echoing its analysis in the judgment and order in favor of the law firm defendants, a couple months later, the court granted R Consulting and Michel's anti-SLAPP motion. Judgment was entered in those defendants' favor. Kim timely appealed these judgments.

---

[3]     Kim's first notice of appeal addressed the order and judgment in favor of the law firm defendants. Kim's second notice of appeal addressed the order and judgment in favor of R Consulting and Michel. Neither of the notices of appeal addresses the order or judgment in favor of Ricotta, and no judgment in favor Ricotta appears in the record. Further, Kim did not include in the record the briefing, affidavits, or other evidence regarding the motions brought by R Consulting and Michel, or by Ricotta.

7

II.

DISCUSSION

A. *Malicious Prosecution Based on Contempt Charges*

Kim appeals from judgments granting anti-SLAPP motions and dismissing his lawsuit.[4] We review anti-SLAPP motions de novo. (*Freeman v. Schack* (2007) 154 Cal.App.4th 719, 727 (*Freeman*).)

The anti-SLAPP statute provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) A court conducts a two-step analysis when ruling on a special motion to strike under the anti-SLAPP statutory framework. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon*).) "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing the probability of success." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).) The second step is a " 'summary-judgment-like procedure.' " (*Ibid.*) "[T]he trial court in making these determinations considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' " (*Equilon,* at p. 67, quoting § 425.16, subd. (b)(2).)

---

4    Kim only challenges the judgments on the malicious prosecution cause of action.

There is no dispute here that defendants' allegedly wrongful conduct of moving for an OSC re contempt is protected activity. A malicious prosecution action, by its terms, arises from an underlying lawsuit and alleges defendants committed a tort by engaging in the underlying action. (See *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734-735, 740-741 (*Jarrow Formulas*) [concluding that malicious prosecution is not exempt from anti-SLAPP scrutiny and explaining that "every Court of Appeal that has addressed the question has concluded that malicious prosecution causes of action fall within the purview of the anti-SLAPP statute"].)

Although a malicious prosecution claim meets the requirement of the first prong because it constitutes activity protected by section 425.16 (see *Baral*, *supra*, 1 Cal.5th at p. 384; *Jarrow Formulas*, *supra*, 31 Cal.4th at pp. 734-735, 740-741), Kim does not meet the second prong of the test because he cannot demonstrate a probability of success on the merits, as an OSC for contempt does not properly form the basis of the malicious prosecution action here, as we next explain.

To establish a malicious prosecution claim, a plaintiff must show (1) the defendants commenced the prior action or directed it, and the defendants pursued the action to legal termination in the plaintiff's favor; (2) the defendants brought the action without probable cause; and (3) the defendants initiated the action with malice. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 871-872; *Silver v. Gold* (1989) 211 Cal.App.3d 17, 22.)

Additionally, a malicious prosecution action cannot be based on a subsidiary procedural action or an action that is purely defensive. (*Merlet v. Rizzo* (1998) 64 Cal.App.4th 53, 59 (*Merlet*).) This is because permitting a malicious prosecution action based on actions taken in *pending* litigation "would disrupt the ongoing lawsuit by injecting tort claims against the

9

parties' lawyers and because the appropriate remedy for actions taken within a lawsuit lies in the invocation of the court's broad powers to control judicial proceedings.  [Citation.]"  (*Adams v. Superior Court* (1992) 2 Cal.App.4th 521, 528 (*Adams*).)

Kim acknowledges there is split of authority regarding whether an OSC for contempt can be the basis of a malicious prosecution action.  He implies that he can validly raise a complaint for malicious prosecution based on R Consulting's and the law firm's conduct of filing an OSC for why contempt should not have been issued.  We start by considering whether malicious prosecution based on the filing of contempt charges is proper.

In *Chauncey v. Niems* (1986) 182 Cal.App.3d 967 (*Chauncey*), the Second Appellate District, Division One, considered whether a cause of action for malicious prosecution could be based on an OSC regarding contempt during a marriage dissolution dispute.  (*Id*. at pp. 971-973.)  Chauncey argued that his ex-wife had made several legal requests in an effort to harass him before his impending remarriage.  (*Id*. at p. 972.)  In dicta, the court reasoned that the OSC re contempt exposed Chauncey to sanctions, so it bore the earmarks of an adversarial proceeding:  it required him to retain counsel, appear in court, and respond to lengthy interrogatories.  (*Id*. at p. 975.)  The court further explained that although the OSC did not exist independently from the rest of the lawsuit, "it incurred expenses, provoked psychological trauma and required expenditure of time and effort to defend," so it was "the sort of proceeding upon which plaintiff could base a malicious prosecution action."  (*Id*. at pp. 975-976.)  However, it also sought to keep the scope of such claims narrow, commenting that "[t]o hear malicious prosecution claims in any but the most egregious cases would unduly encourage litigation of this sort.  Unlimited access to a forum in which to litigate malicious prosecution

10

claims based on marital dissolutions would clog the courts, and exacerbate and prolong what is ordinarily an acutely unhappy state of affairs." (*Id.* at p. 979.)

Division Five of the First Appellate District reached a different conclusion outside the family law context in *Lossing v. Superior Court* (1989) 207 Cal.App.3d 635 (*Lossing*).  There, the appellate court held that an OSC regarding contempt, even one brought in bad faith or for harassment, is most appropriately addressed with an award of sanctions against the attorney because permitting such a cause of action would "frustrate the intent of the Legislature to vest the courts with broad power to control proceedings."  (*Id.* at pp. 636, 639.)  In reaching this conclusion, the court considered contempt proceedings in the context of the discovery statutes and determined that contempt was a sanction for misuse of the discovery process, which meant it was part of an ongoing action, not a separate proceeding.  (*Id.* at pp. 636, 638.)  Because a motion for an OSC regarding contempt was ancillary, and not independent, it could not provide the basis for a malicious prosecution action.  (*Ibid*; see also *Merlet, supra,* 64 Cal.App.4th at p. 59; *Adams, supra,* 2 Cal.App.4th at p. 528.)

Like the court in *Lossing,* our Supreme Court has emphasized the role of an action's independence in determining whether a malicious prosecution claim can arise.  In *Coleman v. Gulf Insurance Group* (1986) 41 Cal.3d 782, the Supreme Court distinguished cross-complaints from appeals because cross-pleadings are treated as "distinct and independent actions," while an appeal " 'is not a separate proceeding and has no independent existence.' " (*Id.* at p. 793, quoting *Twyford v. Twyford* (1976) 63 Cal.App.3d 96, 922.)  Thus, we look to the issue of independence of action in reaching our conclusion here.

Kim argues that the contempt charge here was an independent action because it required an arraignment and a criminal plea, as well as proof of guilt beyond a reasonable doubt, and it could have resulted in a criminal record for Kim. Kim also maintains that malicious prosecution claims have been routinely permitted when the accused has secured a favorable termination of a criminal trial imposed by an improper charge. However, the cases he cites are distinguishable; they address criminal charges brought outside the parameters of existing civil actions, not civil contempt charges raised in the context of a discovery dispute.

For example, in *Tushinsky v. Arnold* (1987) 195 Cal.App.3d 666, 670-671, the malicious prosecution claim was based on a charge brought by the district attorney after a wife filed a Domestic Violence Prevention Act (DVPA) petition. There, the wife directed her attorney to do nothing that would result in her child's father being criminally prosecuted for the sexual abuse she believed her husband was imposing on her daughter, instead asking that the matter be handled in the civil courts only in connection with their marital dissolution. The attorney allegedly advised the mother to file a DVPA petition, knowing the district attorney would be required to investigate allegations, potentially giving rise to a criminal accusation. The wife filed the DVPA petition, and the district attorney filed a criminal complaint against the husband, which it later dismissed. After the dismissal, the husband sued the wife for malicious prosecution based on her filing the DVPA petition without " 'honestly, reasonably and in good faith' " believing her husband was guilty of the crimes charged, and judgment was entered against the wife. The wife filed an action against the attorney for infliction of emotional distress and negligence, and for breach of confidence and trust and for the establishment of a constructive trust. The trial court dismissed those causes

12

of action, and the wife appealed, contending she had met her pleading burden. The appellate court did not discuss the propriety of the husband's earlier malicious prosecution case. It simply identified that the husband had been successful in his malicious prosecution case, which established collateral estoppel as to some of the elements of the causes of action in the wife's case. In other words, *Tushinsky* had nothing to do with whether a party can sue for malicious prosecution following a favorable outcome in a contempt trial.

In *Van Audenhove v. Perry* (2017) 11 Cal.App.5th 915, 919-920, the plaintiff had been arrested without a warrant, and the court concluded that a warrantless arrest was not a "proceeding" giving rise to a malicious prosecution action. The arrest occurred outside the context of any other civil or criminal case.

In contrast here, the OSC re contempt was issued in the context of ongoing, contentious litigation and regarded repeated efforts at engaging Kim in postjudgment debtor examinations, as well as discovery related to collection of the judgment; it was not raised as a separate proceeding with an independent existence. Without the underlying postjudgment discovery disputes, there would be no contempt motion. While the motion undoubtedly "incurred expenses . . . and required expenditure of time and effort to defend" (*Chauncey*, *supra*, 182 Cal.App.3d at p. 975), those expenses and efforts were the result of ongoing litigation, not new or different obligations resulting from a course of conduct independent from the existing litigation (see *Lossing*, *supra*, 207 Cal.App.3d at pp. 636, 638). Because the OSC regarding contempt was not a valid basis for a malicious prosecution claim here, the malicious prosecution complaint was properly struck.

In his reply brief, Kim emphasizes that contempt of court is a criminal offense and not a civil matter. And during oral argument, counsel for Kim

13

likewise asserted that this matter should be handled differently than *Lossing* because of its criminal nature. But the order at issue here was not one for criminal contempt; the court granted a request for an OSC for why it should not issue civil contempt, and the minutes of the contempt trial identified it as a civil trial, not a criminal one.

Civil contempt is quasi-criminal in nature, but it is governed by sections 1209 through 1222, whereas criminal contempt is prosecuted and punished as a violation of Penal Code section 166 and it results in a misdemeanor conviction. (*Pacific Tel. & Tel. Co. v. Superior Court of Los Angeles County* (1968) 265 Cal.App.2d 370, 371-372; *Mitchell v. Superior Court* (1989) 49 Cal.3d 1230, 1240 (*Mitchell*).) The Code of Civil Procedure authorizes the court to impose fines or imprisonment (§§ 1218, subd. (a) [fine], 1219, subd. (a) [imprisonment]) in order to exercise "the inherent power of the court to conduct the business of the court and enforce the lawful orders of the court" (*Pacific Tel.,* at p. 372), but those powers do not transform a civil contempt proceeding into a criminal one.[5]

"[W]here the object of the proceedings is to vindicate the dignity or authority of the court, they are regarded as criminal in character even though they arise from, or are ancillary to, a civil action." (*Morelli v. Superior Court of Los Angeles County* (1969) 1 Cal.3d 328, 333.) But where the purpose is "to protect and enforce the rights of private parties by compelling obedience to court orders and decrees, then the proceeding is said to be civil. [Citations.]

---

[5] Additionally, "[i]t has long been established that the Code of Civil Procedure contempt statute triggers neither a state constitutional nor statutory right to a jury trial." (*Mitchell, supra,* 49 Cal.3d at p. 1240.) In contrast, "persons prosecuted for contempt under [Penal Code] section 166, which by its express terms is a misdemeanor, have a state constitutional and statutory right to a jury trial." (*Ibid.*)

In other words criminal contempt *punishes* whereas civil contempt *coerces*." (*People v. Derner* (1986) 182 Cal.App.3d 588, 592, citing *Morelli*, at p. 333.)

Here, the motion for an OSC was brought under section 1209 based on allegations of repeated violations of discovery-related orders, and the order was used to control the proceedings and coerce compliance with court orders. Accordingly, we view it as civil in nature and dependent upon the postjudgment proceedings. Under these circumstances, the contempt claim was not a proper basis for a malicious prosecution cause of action, and Kim therefore cannot demonstrate a probability of success.

Kim's primary focus on appeal is that the court erred by applying an incorrect standard in determining that Kim failed to demonstrate a probability of success.[6] This argument assumes an OSC re contempt provides a valid basis for a malicious prosecution action. Because we have determined that Kim fails to show a probability of success for a different

---

[6] We note that our denial of the motion to dismiss his appeal in *R Consulting & Sales, Inc. v. Info Tech Corporation, et al.*, *supra*, D072492 based on the disentitlement doctrine does not operate as law of the case with respect to the probability of success of the OSC. The law of the case doctrine requires lower courts and subsequent appeals to adhere to a principle or rule of law necessary to a decision in an initial appeal. (See *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 701 [law of the case applies to later proceedings in same case].) The language in our earlier opinion must be understood in light of the facts and issues before us; our opinion is not authority for a proposition we did not consider. (See *Hedwall v. PCMV, LLC* (2018) 22 Cal.App.5th 564, 577, fn. 7.) Our earlier appellate opinion answers only the question of whether to apply the disentitlement doctrine, and we concluded that the facts of the case did not persuade us that it should apply. We made no findings of fact or determinations regarding whether defendants made a sufficient showing of probability of success in its motion for an OSC regarding contempt in our earlier decision.

15

reason—the defendants' motion for an OSC re contempt does not form a basis for a malicious prosecution action—we do not reach this argument.

### B. *The Judgment in Favor of R Consulting and Michel*

Having already reached our conclusion based on the legal issue, we do not need to reach the question of probability of success regarding any of the defendants. Were we to do so, we would nonetheless affirm the judgment against R Consulting and Michel because Kim failed to provide a complete record for us to review.

A fundamental rule of appellate review is that the trial court's order or judgment is presumed to be correct. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609; *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.) To overcome this presumption, the appellant bears the burden of providing an adequate record to affirmatively demonstrate error. (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181; 187; *Sutter Health Uninsured Pricing Cases* (2009) 171 Cal.App.4th 495, 498 [incomplete record construed against appellant].) The failure to provide an adequate record makes it impossible to overcome the presumption of correctness necessary for reversal of the court's order or judgment in favor of R Consulting and Michel.

Although we review decisions regarding anti-SLAPP motions de novo (*Freeman*, *supra*, 154 Cal.App.4th at p. 727), the absence of any underlying briefing and evidence including affidavits, means we cannot review the parties' arguments or consider the evidence to determine probability of success. (See *Equilon*, *supra*, 294 Cal.4th at p. 67 [explaining the court considers the pleadings and the evidence in the second step of the anti-SLAPP analysis]; see also *HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212.) The failure to provide us with an adequate record of

16

the issues on which review is sought requires us to resolve the issues against an appellant.  (See *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1296.)

DISPOSITION

The judgments as to the law firm defendants, R Consulting, and Michel are affirmed.  Parties to bear their own costs on appeal.


HUFFMAN, Acting P. J.

WE CONCUR:


HALLER, J.


AARON, J.